[No. J.D. 9. En Banc. April 6, 1994.]

*In the Matter of the Disciplinary Proceeding Against* JOHN G. RITCHIE, *as Judge of the King County District Court.*

726

*Stafford Frey Cooper & Stewart,* by *Thomas D. Frey* and *Anne M. Bremner,* for the Judge.

*Byrnes & Keller, Peter D. Byrnes,* and *Paul R. Taylor,* for the Commission on Judicial Conduct.

UTTER, J. — John G. Ritchie has been a King County District Court judge with the Seattle Division since 1978. He appeals a decision by the Commission on Judicial Conduct (Commission) recommending he be censured and removed from office for various improprieties. These mainly concerned what the Commission found to be improper requests for reimbursement of travel expenses for judicial business exhibiting a pattern of conduct the Commission found involved dishonesty for personal gain, defrauding the public, and misrepresenting facts and circumstances.

The facts found by the Commission indicate that in 1988, 1990, and 1991 Judge Ritchie misrepresented the purpose of his travel as being to attend a "conference" when it is uncontested he attended no formal conference. On these occasions, as well as on a 1987 trip to Florida, he sought reimbursement for car and lodging expenses beyond that needed for the minimal judicial activities he asserts he was conducting. The Commission report concluded that "Judge Ritchie's claimed judicial business in connection with the trips at issue was minimal at best and wholly incidental to the personal nature of the trips." Br. of Commission app., at 115; Commission Decision, at 8. We agree with this characterization of his behavior, and accordingly remove him from office.

The Commission's initial investigation arose out of a complaint made in May 1991 by a litigant displeased with the manner in which Judge Ritchie conducted himself in handling her case. Commission Papers vol. I, at 17; Complaint Form, at 100106. That investigation did not lead to the filing of any charges, but prompted a further investigation of Judge Ritchie's conduct.

On February 19, 1992, the Commission sent Judge Ritchie a letter informing him it was pursuing proceedings against him. A Statement of Allegations was included with the letter. Statement of Charges, at 1; Br. of Commission app. (Appendix of Commission), at 1. On August 18, 1992, an Amended Statement of Allegations and a Statement of Charges followed. Statement of Charges, at 1, 2; Appendix of Commission, at 1, 2.

The formal complaint filed by the Commission alleged violations of canons 1 and 2(A) of the Code of Judicial Conduct, which hold judges to a high standard of integrity and require judges to desist from even the appearance of impropriety.

Judge Ritchie was charged with submitting travel vouchers to King County which contained false and misleading statements in connection with one trip to Jamaica, four trips to Florida, and one trip to Arizona; making personal long-distance telephone calls at county expense; and using county postage stamps for personal business. Statement of Charges, at 2-5; Appendix of Commission, at 1, 2. The charges involving the trip to Jamaica and the improper use of postage stamps were ultimately dismissed for want of evidence.

On September 23, 1992, the judge moved for discovery pursuant to CR 26, requesting the names and addresses of the witnesses whose testimony the Commission expected to offer at the hearing; a brief summary of their expected testimony; copies of their signed or recorded statements; copies of all documents to be used at the hearing; and a copy of the verified statement filed with the Commission and forming the basis of the Commission's initial proceedings. Commission Papers vol. I, at 6, 7,11.

The record discloses that after the Statement of Charges was filed, Judge Ritchie was advised of the identity of the Commission's witnesses and provided with a description of their expected testimony. Appendix of Commission, at 17, 36; Commission Papers vol. I, at 40. He also received copies of the documents Commission counsel intended to present at the hearing, see Commission Papers vol. I, at 3; and copies of the signed and recorded witness statements as required by WAC 292-12-080. Appendix of Commission, at 17.

A fact-finding hearing was held before a 5-member Commission panel on January 25, 26, and 27, 1993. Report and Recommendation; Appendix of Commission, at 98. Following a hearing on the merits on March 1, 1993, the Commission issued a report and recommendation, finding two violations of

the Code of Judicial Conduct. Report and Recommendation; Appendix of Commission, at 98, 103; Commission Decision; Appendix of Commission, at 115. The Commission unanimously recommended censure without the additional sanction of suspension or removal from office. The Commission also ordered he make restitution on the sums owed. Report and Recommendation; Appendix of Commission, at 98, 103; Commission Decision; Appendix of Commission, at 115.

On March 12, 1993, Commission counsel filed objections, arguing the judge be removed rather than merely sanctioned. Appendix of Commission, at 101. Judge Ritchie filed a brief in response on March 17, 1993. Appendix of Commission, at 102. On August 6, 1993, in the wake of the judge's statements to the local press that he had done nothing improper, the Commission changed its decision and a majority recommended the judge be removed from office. Commission Decision; Appendix of Commission, at 115.

Three panel members concurred and dissented noting Commission counsel had not addressed the issue of sanctions in presenting the Commission's case to the hearing panel. They further noted that it was only after the panel issued its report, and Judge Ritchie publicly commented he did not agree with the panel's conclusions, that Commission counsel moved for reconsideration on the ground removal was appropriate instead. The concurrence/dissent noted that although the judge's comments were troubling, they added nothing to the record which was not apparent throughout the proceedings, namely that the judge maintained he was entitled to partial reimbursement because he had conducted some judicial business on his trips. The concurrence/dissent also pointed out there had been no additional evidence taken, and that accordingly the Commission's change of decision from censure to removal seemed extreme. Appendix of Commission, at 115; see Concurring and Dissenting Opinion (Coleman, J., and Kelly, J.); Concurring and Dissenting Opinion (Hannula).

The judge now brings the present appeal, arguing that the evidence against him was not clear, cogent, and convinc-

ing, and that the Code of Judicial Conduct and statute pursuant to which he was sanctioned are too vague to provide notice of the prohibited conduct. Judge Ritchie also maintains the Commission violated its own rules of procedure and his rights under the fourth, fifth and fourteenth amendments to the United States Constitution.

■ The judge maintains the Commission failed to provide him the opportunity to argue the sanction of removal from office on the record pursuant to WAC 292-12-120(5). It is true, as the Commission indicates, the judge submitted a memorandum "in lieu of oral argument". Mem. of Judge Ritchie, at 3 n.3 (June 11, 1993). However, the decision to forgo oral argument was based on his receipt of the Draft Commission Decision in which *censure* — not removal — was the sanction imposed. Draft Commission Decision; Appendix of Commission, at 103. Under these circumstances, the Commission's contention the judge waived his right to argue the Commission's proposed decision on the record is strained. The right could not be meaningfully exercised without knowledge of the sanction sought. Although the Commission should in the future abide closely with the procedural requirements set out in its regulations, any procedural deficiencies which may have occurred below are moot on this record in view of our de novo review.

■ The judge's constitutional arguments are not well taken, insofar as they are premised on the notion judges in disciplinary proceedings are entitled to the same rights as criminal defendants. The applicable standard is civil in nature. *See In re Deming*, 108 Wn.2d 82, 103, 736 P.2d 639 (1987). Previous suggestions to the contrary in *In re Deming*, *supra*, were unnecessary to its holding. *See In re Deming*, *supra* at 99 n.4, 103.[1]

---

[1]Although the court mentioned in dicta that the rights of a judge in disciplinary proceedings should be identical to those of criminal defendants, it actually held that "[a] judge is entitled to the same *procedural* due process protection when facing disqualification as a *lawyer facing disbarment*." (Italics ours.) *In re Deming*, 108 Wn.2d at 103.

## I

### STANDARD OF REVIEW

■■ It is well established that our review of disciplinary proceedings is de novo. *See In re Buchanan*, 100 Wn.2d 396, 400, 669 P.2d 1248 (1983). Nevertheless, in deciding the appropriate sanction in any given case, we accord serious consideration to the Commission's recommendation. *See In re Buchanan, supra* at 400; *In re Espedal*, 82 Wn.2d 834, 838, 514 P.2d 518 (1973); *In re Smith*, 83 Wn.2d 659, 663, 521 P.2d 212 (1974). Our concern in these proceedings is to impose a sanction appropriate to the level of culpability. The sanction must also be sufficiently severe to "restore and maintain the dignity and honor of the position and to protect the public from any future excesses." *In re Buchanan*, 100 Wn.2d at 400.

■ The criteria we consider include the following:

(a) whether the misconduct is an isolated instance or evidenced a pattern of conduct; (b) the nature, extent and frequency of occurrence of the acts of misconduct; (c) whether the misconduct occurred in or out of the courtroom; (d) whether the misconduct occurred in the judge's official capacity or in his private life; (e) whether the judge has acknowledged or recognized that the acts occurred; (f) whether the judge has evidenced an effort to change or modify his conduct; (g) the length of service on the bench; (h) whether there have been prior complaints about this judge; (i) the effect the misconduct has upon the integrity of and respect for the judiciary; and (j) the extent to which the judge exploited his position to satisfy his personal desires.

*In re Deming*, 108 Wn.2d 82, 119-20, 736 P.2d 639 (1987), *cited with approval in In re Blauvelt*, 115 Wn.2d 735, 744-45, 801 P.2d 235 (1990); *see also In re Kaiser*, 111 Wn.2d 275, 289-90, 759 P.2d 392 (1988).

## II

### SUFFICIENCY OF THE EVIDENCE

Judge Ritchie contends that insufficient evidence supports the Commission's findings of impropriety under the clear, cogent, and convincing standard established in WAC 292-12--110(4). Br. of Appellant (amended), at 44. We disagree.

The Commission found "the travel vouchers submitted by Judge Ritchie in connection with the trips contained false and misleading statements concerning the nature, purpose, duration and benefit of the court-related business allegedly conducted during the trips." Appendix of Commission, at 103. The voucher forms Judge Ritchie submitted to the County are contained in the record and support this conclusion.

The four incidents that form the basis for our decision establish a pattern of claims for reimbursement where the judicial business conducted was minimal at best and wholly incidental to the personal nature of Judge Ritchie's trips. The Commission found, and we agree, that the judge sought reimbursement by misrepresenting the primary purposes of his 1990 and 1991 trips.

In 1990, under "Organization to be Visited", the judge indicated "Florida Judicial Conference". He explained the purpose of the trip as "judicial education". Appendix of Commission Ex. 10. He remained in Florida 2 weeks, and sought and received reimbursement for his entire air fare ($300), 11 days' lodging ($471), and the entire car rental bill ($187).

Judge Ritchie admits there was no formal conference. He testified that during this trip he met with a local judge and personal friend, Judge Grube, and visited the State Attorney's office of Pinellas County, the Criminal Complex in Clearwater, and the offices of the Salvation Army. See Supplemental Br. of Appellant, at 46-48. The record indicates these meetings were of short duration and incidental to other nonjudicial reasons for traveling to Florida.

On November 4, 1991, he submitted a travel voucher in which he indicated the purpose of the trip was "Conference — Law Related Education". He was in Arizona for 3 weeks. In addition he submitted a letter in which he stated "I have prorated the car rental between personal use and use of the vehicle relating to the *conference*." (Italics ours.) Judge Ritchie sought reimbursement for the entire air fare ($258) and 2 weeks of car rental ($147.16). Appendix of Commission Ex. 11.

Judge Ritchie admits there was no formal conference. Br. of Appellant, at 50. He asserts he spent part of 2 days at the Center for Law-Related Education. Dep. of Ritchie vol. II, at 242. He also maintains he spent half a day at the Scottsdale Municipal Court observing procedures; visited the Maricopa County Courthouse where he met with clerks and court administrators; and visited the Maricopa County Office of Public Defense. Dep. of Ritchie vol. II, at 245.

On two trips to Florida in 1987 and 1988, similar misconduct occurred. On the occasion of his 1987 trip to Florida Judge Ritchie submitted a voucher for attending a CLE conference entitled "Appellate Practice for the General Practitioner". It lasted 1 day. He remained in Florida for 2 weeks. Under "Organization to be Visited" he indicated "Florida Bar Association". He sought reimbursement for the entire air fare ($309.90), 4 days' lodging ($160), and 2 weeks of car rental ($113.34). Appendix of Commission Ex. 5. Dep. of Ritchie, vol. I, at 81 (July 28, 1992).

To justify the cost of the car rental and lodging, the judge presented evidence that, in addition to the 1-day conference, he met with Judge Luten and Judge Grube. Judge Grube was a personal friend and an earlier co-investor in Florida property. Judge Ritchie also claims he visited the Pinellas County Alcohol Treatment Program, observed traffic court and met with a local attorney. See Supplemental Br. of Appellant, at 10-20.

These assertions, which the testimony showed were at best minimal efforts at judicial business, do not justify the misleading nature of his representations which gave the impression the lodging and rental car costs were incurred entirely in connection with a conference and visits to the Florida Bar Association.

On the occasion of his 1988 trip to Florida, Judge Ritchie submitted a form indicating, under "Organization to be Visited", "Florida Bar Association Conference". Appendix of Commission Ex. 8. He remained in Florida for 2 weeks, and sought reimbursement for the entire air fare ($360), approximately 5 days' lodging ($236.16) and approximately 2

weeks of car rental ($161.31). Appendix of Commission Ex. 8. See Dep. of Ritchie vol. II, at 172 (July 31, 1992).

The judge attended no conference on this trip. The Commission found, and we agree, that the judge was initially registered for a conference on sexual harassment, but was informed prior to his departure that it had been canceled. The judge admits this, but maintains he had already paid for a nonrefundable airline ticket to attend the conference. He explains that when the conference was canceled he made alternative plans to make use of the time he would be in Florida. Dep. of Ritchie vol. II, at 139. He testified he met with Judges Luten and Grube, and visited the Pinellas County Circuit Court and County Court; the Sarasota courthouse for a day; the court arbitration and mediation programs; and the citizens' dispute settlement program. Dep. of Ritchie vol. II, at 139, 172, 175. See also Supplemental Br. of Appellant, at 27-28. He also maintains a package car rental was less expensive at a weekly rather than a daily rate. Br. of Appellant, at 47.

Even assuming the tickets were nonrefundable, his statement that he was traveling to attend a conference, when the conference had been canceled, was misleading. The other expenses he attributed to this trip, in particular the entire 12 days of car rental, cannot be justified.

## III

### VAGUENESS

Judge Ritchie also maintains that canons 1 and 2(A) of the Code of Judicial Conduct, read together with the underlying statutory scheme, RCW 3.58.040, are too vague to provide adequate notice of the behavior prohibited. He maintains that because neither "reasonable traveling expenses" nor "business of the court" is defined in RCW 3.58.040, the imposition of sanctions cannot be conditioned on their violation. His argument has some initial appeal, as the statute pursuant to which he was reimbursed is couched in general terms:

> District judges, judges pro tempore, court commissioners, and district court employees shall receive their *reasonable*

traveling expenses when *engaged in the business of the court* as provided in chapter 42.24 RCW.

(Italics ours.) RCW 3.58.040.

It is true the conduct pursuant to which he was disciplined is not clearly proscribed by RCW 3.58.040, insofar as the statute does not expressly prohibit judges from combining business and pleasure trips, and does not define "reasonable traveling expenses" or "business of the court".

Judge Ritchie's vagueness challenge is ultimately immaterial, however, because he was not disciplined for violating the statute. Rather, he was censured for violating canons 1 and 2(A) of the Code of Judicial Conduct which hold judges to a higher standard of integrity and require avoiding even the appearance of impropriety.

Canon 1 provides:

JUDGES SHOULD UPHOLD THE INTEGRITY AND INDEPENDENCE OF THE JUDICIARY

An independent and honorable judiciary is indispensable to justice in our society. Judges should participate in establishing, maintaining, and enforcing, and should themselves observe high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this code should be construed and applied to further that objective.

Canon 2 provides:

JUDGES SHOULD AVOID IMPROPRIETY AND THE APPEARANCE OF IMPROPRIETY IN ALL THEIR ACTIVITIES

(A) Judges should respect and comply with the law and should conduct themselves at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

The judge's mischaracterization of his activities, and the latitude he permitted himself when requesting reimbursement for travel and car rentals, reflect a continuing disregard of the scrupulous standards of personal integrity to which judges are expressly held in the canons. The Commission observed that Judge Ritchie "engaged in a pattern of misconduct involving dishonesty for personal gain, defrauding the public and misrepresentation of facts and circum-

stances." Commission Decision, at 11; Appendix of Commission, at 115. We agree.

Judge Ritchie suggests in his briefs that he did not know the conduct in which he engaged was improper. A careful reading of canons 1 and 2 of the Code of Judicial Conduct led the Commission to reject this argument, as do we. Applying the *Deming* criteria to the facts of this case, the Commission found the following: The judge's misconduct, far from being isolated, involved multiple offenses over a 5-year period; the nature of the misconduct was extremely serious, involving dishonesty and conversion of public funds for his personal benefit; the misconduct occurred in both his official and personal capacity; the judge failed to acknowledge the wrongfulness of his conduct; and there was little in the judge's conduct to assure he would refrain from such activities in the future. See Commission Decision, at 9-10; Appendix of Commission, at 115.

 This case gives us the opportunity to clarify the circumstances under which we will consider it a violation of the Code of Judicial Conduct to request reimbursement for travel. Reimbursements for expenditures not related to a bona fide judicial business purpose are improper. The business purpose of the trip, considered alone, must justify the expenses sought to be reimbursed.

Applying this standard, Judge Ritchie's behavior was improper for two reasons. First, the Commission found, and we agree, the business purposes purportedly justifying the trips did not warrant reimbursement because they were incidental to non-business-related activities. Second, even if the business purposes had been legitimate, the few days in which the judge engaged in arguably legitimate judicially related activities did not justify his requests for several weeks of car rentals and extended hotel costs.

For the acts of misconduct discussed here, which considered together establish a pattern of misconduct which violates the Code of Judicial Conduct, Judge Ritchie is removed from office. Our order makes it clear we consider the pattern of misconduct in which Judge Ritchie engaged to be a grave

violation of the public trust, one which detrimentally affects the integrity of the judiciary and undermines public confidence in the administration of justice.

ANDERSEN, C.J., and BRACHTENBACH, DURHAM, SMITH, GUY, JOHNSON, and MADSEN, JJ., concur.