847 So.2d 1178 (2003)
In re Judge Randolph H. PARRO.
No. 2003-O-0792.
Supreme Court of Louisiana.
May 2, 2003.

JUDICIAL DISCIPLINARY PROCEEDINGS
PER CURIAM.[*]
This matter comes before the court on the recommendation of the Judiciary Commission of Louisiana ("Commission"), pursuant *1179 to La. Const. art. V, § 25(C), that Randolph H. Parro, Judge of the Court of Appeal, First Circuit, be publicly censured and ordered to pay the cost of the prosecution of these proceedings. For the reasons that follow, we adopt the recommendation of the Commission and publicly censure Judge Parro.

FACTS AND PROCEDURAL HISTORY
Judge Randolph H. Parro was first elected as a judge in 1982, serving in the Seventeenth Judicial District Court for the Parish of Lafourche. He was elevated to the Court of Appeal, First Circuit in 1993, a position he has held continuously since that time.
In 2000, Judge Parro's niece and goddaughter, Celeste Knobloch Talbot, was charged in Lafourche Parish with felony theft. Sometime between the date Ms. Talbot was charged and the date she pleaded guilty to the charge, Judge Parro called Walter "Butch" Naquin, Jr., the District Attorney of Lafourche Parish, to discuss the matter. Judge Parro pointed out to Mr. Naquin that while Ms. Talbot maintained she was innocent of the crime, she and her counsel had negotiated an Alford "best interest" plea with his office. Judge Parro and Mr. Naquin discussed the feasibility of a pre-trial intervention program, if the victim had no objection, after payment of restitution agreed to in the plea bargain. They also discussed whether the District Attorney's office opposed a criminal sentence entered under La.Code Crim. P. art. 893. Finally, Judge Parro asked Mr. Naquin whether his office would consider dismissing the prosecution of his niece if the victim would be willing to drop the charges upon payment of the full restitution requested in a pending civil suit.
After receiving Mr. Naquin's assurance that the prosecution of his niece would be dismissed if the victim dropped the charges, Judge Parro called Dr. Sheard Ber, the father of Dr. S. Douglas Ber, the victim of Ms. Talbot's crime. Judge Parro asked Dr. Sheard Ber, a lifelong friend, if he could meet with him to discuss the situation between his niece and Dr. Ber's son. Dr. Sheard Ber consented to the meeting, which was held later at his office. During the meeting, Judge Parro asked Dr. Sheard Ber to find out if his son would consider dropping the charge against Ms. Talbot in exchange for the full restitution requested in the pending civil suit. Dr. Sheard Ber did as Judge Parro requested; however, Dr. S. Douglas Ber declined to drop the criminal matter.
In February 2001, on the day Ms. Talbot was scheduled to enter a guilty plea in the criminal case, Judge Parro called the presiding judge, Judge John J. Erny, Jr., to ask whether Judge Erny would consider granting a continuance of the matter. Judge Parro told Judge Erny that Ms. Talbot wanted the continuance so she could obtain and pay, in a lump sum, the restitution agreed upon in the criminal prosecution. She also hoped that she would be able to enter her guilty plea at a time when the courtroom would not be filled with people. Judge Erny stated he would be willing to grant a short continuance, and he did so. On May 23, 2001, Ms. Talbot pleaded guilty to felony theft and was given a seven-year suspended sentence, placed on five years supervised probation with conditions, and ordered to pay $15,000 in restitution.
On May 30, 2001, a newspaper article appeared in The Houma Courier concerning Ms. Talbot's case. The article, which was titled "Theft victims say judge got niece lenient sentence," reported that Judge Parro had called Dr. Sheard Ber and quoted Judge Parro as saying, "I did this as an uncle and a godparent.... I just *1180 asked if there was anything that could be done so Celeste might avoid prosecution. I didn't give up my rights as a citizen when I became a judge." Judge Parro also told the newspaper reporter he did not feel his position as a judge affected Judge Erny's sentencing decision, and Judge Parro stated: "If you knew Judge Erny, he's tough but fair.... And this is a pretty tough sentence. If I had seven years hanging over my head, with all these conditions attached, I would be under pressure."
On June 13, 2001, the Office of Special Counsel asked Judge Parro to respond to the allegations in the newspaper article. In a letter dated July 9, 2001, Judge Parro admitted that he took certain actions on his niece's behalf in connection with her criminal case, but stated that he sincerely believed he did not abuse his judicial office in so doing. The Commission subsequently authorized an investigation into the matter, and on September 24, 2002, the Commission filed formal charges against Judge Parro, alleging his interventions on behalf of his niece violated the Code of Judicial Conduct and La. Const. art. V, § 25(C).
On December 16, 2002, Judge Parro and the Office of Special Counsel jointly filed a "Statement of Uncontested Material Facts, Stipulated Conclusions of Law, and Stipulated Recommendation of Discipline." In this pleading, the parties agreed that the material facts relative to the Formal Charge are as set forth above. The parties further agreed that Judge Parro's conduct violated Canons 1, 2A, and 2B of the Code of Judicial Conduct (1996),[1] and rose to the level of sanctionable ethical misconduct warranting a referral to this court by the Commission. Finally, the parties agreed that an appropriate sanction for Judge Parro's conduct is a public censure and payment by Judge Parro of all costs incurred by the Commission.
The Commission subsequently voted to accept the parties' stipulations and did not conduct a hearing or require Judge Parro to appear before the membership for questioning. On March 20, 2003, the Commission filed its findings and recommendation in this court, recommending that Judge Parro be publicly censured. It further recommended that Judge Parro be ordered to pay costs of $570.60.
Shortly after the Commission's filing in this court, Judge Parro and the Office of Special Counsel filed a stipulation in which they accepted the recommendations of the Commission. The parties also waived oral argument before this court and requested that we consider the matter based on the record developed before the Commission.

DISCUSSION
Because Judge Parro and the Office of Special Counsel have stipulated to *1181 the facts, the sole issue presented is the appropriate measure of discipline in this case. In re: Shea, 02-0643 (La.4/26/02), 815 So.2d 813. In determining an appropriate sanction, we are mindful that the primary purpose of the Code of Judicial Conduct is to protect the public rather than discipline judges. In re: Harris, 98-0570 (La.7/8/98), 713 So.2d 1138; In re: Marullo, 96-2222 (La.4/8/97), 692 So.2d 1019.
While we recognize Judge Parro did not intentionally violate the Code of Judicial Conduct, it is clear his interventions on behalf of his niece were absolutely improper. His failure to scrupulously abide by the provisions of the Code of Judicial Conduct has the potential to undermine public confidence in the judiciary. As we explained in In re: Wimbish, 98-2882, p. 5 (La.4/13/99), 733 So.2d 1183, 1187:
The canons were designed to promote a standard for judicial conduct that continuously reaffirms the integrity of the judiciary. Judges hold a unique position of administering justice. They symbolize the law, and, accordingly, their actions reflect favorably or unfavorably on the judicial system. For this reason, it is important that judges comply with the laws and rules governing their conduct in a manner which promotes public confidence.
In determining the appropriate sanction for a judge who is subject to a disciplinary action, this court has considered several non-exclusive factors. In re: Best, 98-0122 (La.10/20/98), 719 So.2d 432; In re: Chaisson, 549 So.2d 259 (La.1989). These factors are:
(a) whether the misconduct is an isolated instance or evidenced a pattern of conduct; (b) the nature, extent and frequency of occurrence of the acts of misconduct; (c) whether the misconduct occurred in or out of the courtroom; (d) whether the misconduct occurred in the judge's official capacity or in his private life; (e) whether the judge has acknowledged or recognized that the acts occurred; (f) whether the judge has evidenced an effort to change or modify his conduct; (g) the length of service on the bench; (h) whether there have been prior complaints about this judge; (i) the effect the misconduct has upon the integrity of and respect for the judiciary; and (j) the extent to which the judge exploited his position to satisfy his personal desires.
Applying these factors to the instant case, we find that Judge Parro acted impermissibly in multiple instances on behalf of his niece. While these actions did not occur as part of Judge Parro's official duties, the prestige of his office was brought to bear on those whom he contacted in trying to aid Ms. Talbot, thereby undermining the judicial process. Nevertheless, Judge Parro has acknowledged these acts occurred and no continuing ethical misconduct is expected in light of the unique nature of the incident which caused him to violate the Code of Judicial Conduct. The record reveals that Judge Parro has served on the bench for nearly twenty years and has never been the subject of prior disciplinary charges.
In addition to these factors, we find it significant that Judge Parro did not act in bad faith and admitted the violations without making excuses for himself, other than that he was acting out of his sincere love and concern for a family member. Good faith is not an affirmative defense to a judicial disciplinary charge; however, it may be considered as a mitigating factor which militates in favor of a lesser sanction. Marullo, 96-2222 at p. 7, 692 So.2d at 1023; Chaisson, 549 So.2d at 267.
*1182 Considering all these facts, we conclude the sanction of public censure is appropriate. Accordingly, we will accept the recommendation of the Commission and publicly censure Judge Parro, as well as order him to pay the costs of these proceedings.

DECREE
For the reasons assigned, it is ordered that Judge Randolph H. Parro be publicly censured for violating Canons 1, 2A and 2B of the Code of Judicial Conduct (1996). It is further ordered that Judge Randolph H. Parro reimburse the Judiciary Commission of Louisiana $570.60.
NOTES
[*] Weimer, J., recused.
[1] Specifically, the parties agreed that Judge Parro violated Canon 1 by failing to "personally observe high standards of conduct so that the integrity and independence of the judiciary may be preserved." His conduct in contacting the presiding judge, the district attorney, and the father of the victim in his niece's case and then defending his actions in the media called the integrity and independence of the judiciary into question. Judge Parro violated Canon 2A by failing to "act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Judge Parro violated Canon 2B by lending the prestige of his position as a judicial officer to advance the private interest of his niece to obtain a last-minute continuance in her case, in attempting to have the charges against her dropped, and in defending his own and Judge Erny's actions in the media. These stipulations of law did not address the references in the Formal Charge to violations of La. Const. art. V, § 25(C), which are independent of violations of the Code of Judicial Conduct, but the Commission deemed the admitted Codal violations as sufficient to recommend public discipline.