[No. 200,271-4.  En Banc.]
Argued March 29, 2006.    Decided October 26, 2006.

*In the Matter of the Disciplinary Proceeding Against* RICHARD B. SANDERS, *Justice of the Supreme Court of Washington.*

*Kurt M. Bulmer* and *John A. Strait*, for petitioner.

*Barrie Althoff, J. Reiko Callner*, and *Katrina C. Pflaumer*, for respondent.

*Slade Gorton, Paul J. Lawrence, Matthew J. Segal*, and *Shaakirrah R. Sanders* on behalf of Building Industry Association of Washington, amicus curiae.

¶1 GROSSE, J.[*] — A visit by a judicial officer to a special facility for sexually violent predators is not in itself inappropriate conduct under the Code of Judicial Conduct. However, conversations with the residents of the facility concerning the reasons for their confinement, particularly when one or more of these residents has a matter or matters pending before the court on which the judge sits, can violate the Code of Judicial Conduct. By asking questions of inmates who were litigants or should have been recognized as potential litigants on issues currently pending before the court, Justice Richard B. Sanders violated

---

[*] Judge C. Kenneth Grosse and each member of the en banc court are serving as justices pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a) and Discipline Rules for Judges 13.

the Code of Judicial Conduct. His conduct created an appearance of partiality as a result of ex parte contact.

¶2 The Washington Commission on Judicial Conduct (Commission) received a complaint on March 18, 2003, regarding Justice Sanders' conduct while visiting the Special Commitment Center (SCC) on McNeil Island. The Commission conducted an independent investigation of the allegations, determined that sufficient evidence existed to support the complaint, and sent a statement of allegations to Justice Sanders on October 8, 2003. In April 2004, the Commission determined that probable cause existed to believe that Justice Sanders violated Canons 1, 2(A), and 3(A)(4) of the Code of Judicial Conduct.[1] After a fact-finding hearing, the Commission issued its decision, holding that Justice Sanders violated Canons 1 and 2(A) but did not violate Canon 3(A)(4). The Commission found that Justice Sanders' conduct violated Canon 1 by failing to enforce high

---

[1]

CANON 1 JUDGES SHALL UPHOLD THE INTEGRITY AND INDEPENDENCE OF THE JUDICIARY

An independent and honorable judiciary is indispensable to justice in our society. Judges should participate in establishing, maintaining, and enforcing high standards of judicial conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved. The provisions of this Code are to be construed and applied to further that objective.

CANON 2 JUDGES SHOULD AVOID IMPROPRIETY AND THE APPEARANCE OF IMPROPRIETY IN ALL THEIR ACTIVITIES

(A) Judges should respect and comply with the law and act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

CANON 3 JUDGES SHALL PERFORM THE DUTIES OF THEIR OFFICE IMPARTIALLY AND DILIGENTLY

. . . .

(A) Adjudicative Responsibilities.

. . . .

(4) Judges should accord to every person who is legally interested in a proceeding, or that person's lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider ex parte or other communications concerning a pending or impending proceeding. Judges, however, may obtain the advice of a disinterested expert on the law applicable to a proceeding before them, by amicus curiae only, if they afford the parties reasonable opportunity to respond.

standards of judicial conduct and also violated Canon 2(A) by failing to promote public confidence in the integrity and impartiality of the judiciary. The Commission imposed the sanction of admonishment. Under Discipline Rules for Judges 3, Justice Sanders filed a notice of contest.

¶3 It is well established that disciplinary proceedings are reviewed de novo.[2] Accordingly, this court must make its own determination of the facts and the law as required in a de novo review.[3] The Commission bears the "burden of proving factual findings by clear, cogent, and convincing evidence."[4]

¶4 Justice Sanders embarked on a tour of the SCC despite warnings from his colleagues on the Supreme Court about potential ex parte contact with litigants. During the tour of this facility, Justice Sanders accepted documents on two separate occasions from the inmates. Moreover, in meetings with the residents, some of whom had cases pending before the court, he directly asked them about the issue of volitional control.

¶5 At the time of the visit, the Supreme Court was in the process of deciding *In re Detention of Thorell.*[5] Drafts of both a majority opinion and a dissent by Justice Sanders

---

[2] *In re Disciplinary Proceeding Against Turco,* 137 Wn.2d 227, 245-46, 970 P.2d 731 (1999) ("[D]e novo review means we are not bound by the Commission's findings and conclusions. We must independently evaluate the evidence in the Commission's record to determine if the judge violated the Code and to determine the proper sanction. In so doing, we necessarily give 'considerable weight' to the credibility determinations of the Commission, as the body that had the opportunity directly to observe the witnesses and their demeanor. [*In re Disciplinary Proceeding Against*] *Deming,* 108 Wn.2d [82,] 110[, 736 P.2d 639 (1987)]. We also give 'serious consideration' to the Commission's recommendation on the appropriate sanction. *In re Disciplin[ary Proceeding Against*] *Ritchie,* 123 Wn.2d 725, 731, 870 P.2d 967 (1994)." (footnote omitted)).

[3] *See also Deming,* 108 Wn.2d at 87 (1987) (emphasis omitted) (alteration in original) (quoting *In re Disciplinary Action Against Cieminski,* 270 N.W.2d 321, 326 (N.D. 1978)):

"With this responsibility and power comes the concomitant obligation to conduct an independent inquiry into the evidence to determine whether or not the evidence merits the imposition of any penalty as recommended by the [Commission] or otherwise."

[4] *Turco,* 137 Wn.2d at 246.

[5] 149 Wn.2d 724, 72 P.3d 708 (2003), *cert. denied,* 541 U.S. 990 (2004).

were circulating among the justices at the Supreme Court. *Thorell* was a seminal case in which separate actions by six petitioners were combined, including at least one of the SCC residents with whom Justice Sanders met. A pivotal issue before the Supreme Court in *Thorell* was volitional control. The court was weighing whether the "fact finder must determine that the person facing commitment as a sexually violent predator (SVP) has serious difficulty controlling behavior and, if so, whether this determination must be a separate finding based upon a jury instruction."[6] Thus, the factual record was before the court in each of the consolidated six cases.

¶6 The Commission held, and we agree, that the record established through clear, cogent, and convincing evidence that Justice Sanders violated Canons 1 and 2(A). In support of that holding, the findings reference two of the three letters from resident Andre Brigham Young inviting the justices to visit McNeil Island. Those letters indicate that the residents were looking for something more than just a tour of the facility. In fact, Young suggested that others (opposing counsel and defense attorneys) should be asked to attend to avoid "the appearance of partiality." The letters in and of themselves should have given sufficient notice to Justice Sanders that this visit had the potential of being more than an institutional tour. Additional warning flags were also raised by three justices who expressed concerns about the visit and potential problems. Moreover, a simple computer check would have revealed that Rickey Calhoun and Andre Brigham Young, two people mentioned in the prior communication with Justice Sanders, had cases pending before the Supreme Court. When Justice Sanders met with the residents in small groups, he warned the residents that he could not hear their particular case issues. However, these warnings were followed by specific questions asking the residents about their confinement and what they thought of volitional control.

---

[6] *Thorell*, 149 Wn.2d at 730.

¶7 The Commission justifiably found that Justice Sanders, with full awareness of the potential for situations that could conflict with the Code of Judicial Conduct, embarked on the tour and met with litigants who had pending cases before the court. Further, by raising such critical issues as volitional control with these litigants, Justice Sanders created a situation that clearly violated both the letter and the spirit of the canons and created serious concern for both counsel and fellow jurists about the appearance of partiality.

¶8 Justice Sanders claims that a violation of Canons 1 and 2(A) cannot be found without a concomitant violation of a proscribed act or canon and thus the Commission's failure to find a direct violation of Canon 3(A)(4) precludes it from finding a violation of the other canons. We disagree.

¶9 In our view, *In re Disciplinary Proceeding Against Turco*[7] is dispositive. There, the court found that the judge's act of striking his wife in public had a sufficient nexus to the judicial role, particularly when the judge heard domestic violence cases. If extrajudicial tortious conduct can provide a nexus to the judicial role, then *a fortiori*, judicial conduct can provide a basis for a violation of Canons 1 and 2(A). In the instant case, Justice Sanders' actions were not simply undertaken as a private citizen, but rather within the context of his judicial duties. Our conclusion is underscored by the decision in *In re Disciplinary Proceeding Against Ritchie*.[8] In that case, Judge John G. Ritchie argued that Canons 1 and 2(A) of the Code of Judicial Conduct, together with the statute regulating the behavior, were too vague to give him adequate notice of the prohibited behavior. In denying the claim, the court stated:

> It is true the conduct pursuant to which he was disciplined is not clearly proscribed by RCW 3.58.040, insofar as the statute does not expressly prohibit judges from combining business and pleasure trips, and does not define "reasonable traveling expenses" or "business of the court".

[7] 137 Wn.2d 227, 970 P.2d 731 (1999).

[8] 123 Wn.2d 725, 870 P.2d 967 (1994).

Judge Ritchie's vagueness challenge is ultimately immaterial, however, because he was not disciplined for violating the statute. Rather, he was censured for violating [C]anons 1 and 2(A) of the Code of Judicial Conduct which hold judges to a higher standard of integrity and require avoiding even the appearance of impropriety.[9]

¶10  As noted in the Commission's decision, there are a number of facts in this case that, when taken together, clearly demonstrate that a predictable appearance of partiality could be foreseen.

¶11  Where a judge's decisions are tainted by even a mere suspicion of partiality, the effect on the public's confidence can be debilitating. The canons of judicial conduct should be viewed in broad fashion, and judges should err on the side of caution.[10] Under Canon 3(D)(1), "[j]udges should disqualify themselves in a proceeding in which their impartiality might reasonably be questioned."[11] In *Sherman v. State*,[12] the court found that where a trial judge "may have inadvertently obtained information critical to a central issue on remand, . . . a reasonable person might question his impartiality."[13] The court set the test for determining impartiality:

> [I]n deciding recusal matters, actual prejudice is not the standard. The [Commission] recognizes that where a trial judge's decisions are tainted by even a mere suspicion of partiality, the effect on the public's confidence in our judicial system can be debilitating. . . . The test for determining whether the judge's impartiality might reasonably be ques-

---

[9] *Ritchie*, 123 Wn.2d at 735.

[10] *State v. Graham*, 91 Wn. App. 663, 670, 960 P.2d 457 (1998).

[11] Justice Sanders eventually disqualified himself from deciding these inmates' cases involving the issue of volitional control. A judge's subsequent recusal may remove the "suspicion of partiality" and satisfy Canon 3(D)(1) in specific cases, but it does not necessarily erase violations of other canons of the Code of Judicial Conduct. *See Sherman v. State*, 128 Wn.2d 164, 205-06, 905 P.2d 355 (1995).

[12] 128 Wn.2d 164, 905 P.2d 355 (1995).

[13] *Sherman*, 128 Wn.2d at 206.

tioned is an objective test that assumes that "a reasonable person knows and understands all the relevant facts."[14]

¶12 This court in *In re Disciplinary Proceeding Against Sanders*[15] noted that the interest of the State in maintaining and enforcing high standards of judicial conduct under the auspices of Canon 1 is a compelling one.[16] In *Sanders*, this court balanced that interest against Justice Sanders' First Amendment rights and found that an independent basis for finding a violation of Canon 1 under those circumstances was not possible. Justice Sanders argues that the language in Canon 1 is hortatory and therefore cannot stand as an independent basis for a violation of the Code of Judicial Conduct. In the instant case, Canon 1 sets the conceptual framework under which Canon 2(A) operates. Canon 2(A) provides the more specific restraint, to wit: "Judges should . . . act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Under the circumstances of this case, Canon 1 taken in conjunction with Canon 2(A) provides a sufficiently specific basis to find a violation of the Code of Judicial Conduct. Here, it was clear that there was a substantial basis and expectation that Justice Sanders would be in contact with possible litigants who had pending litigation before the court and that this contact would be viewed as improper.[17] We concur with the Commission's

[14] *Sherman*, 128 Wn.2d at 205-06 (quoting *In re Drexel Burnham Lambert, Inc.*, 861 F.2d 1307, 1313 (2d Cir. 1988)).

[15] 135 Wn.2d 175, 187-88, 955 P.2d 369 (1998).

[16] *See In re McCully*, 942 P.2d 327, 332 (Utah 1997), where the court upheld a reprimand for a judge who had given her opinions to a family court regarding an issue before it. There the court stated that the statutory language " 'conduct prejudicial to the administration of justice which brings a judicial office into disrepute,' " while broad, is not so vague that it does not have any meaning. *McCully*, 942 P.2d at 332 (quoting former UTAH CODE ANN. § 78-7-28(1)(e), *recodified as* 78-8-103(1)(e) (2000)). *See also In re Parro*, 847 So. 2d 1178, 1181 (La. 2003). There the Louisiana Supreme Court held that even though an appellate judge did not intentionally violate the Code of Judicial Conduct, his interventions on behalf of his niece were improper. The canons were devised to promote a high standard for judicial conduct. Judges are the symbol of the law, and as such their actions reflect upon the judicial system.

[17] *See Papa v. New Haven Fed'n of Teachers*, 186 Conn. 725, 744-46, 444 A.2d 196 (1982) (alterations in original) (footnotes omitted):

finding that it was clearly reasonable to question the impartiality of the justice under the circumstances of this case.

■ ¶13  Justice Sanders also raises the issue of whether he was denied due process because of the failure to grant his discovery requests. He bases this claim on his characterization of the proceedings as criminal in nature. However, this court has consistently held that judicial disciplinary proceedings are civil in nature.[18]

■ ¶14  It is well settled that the scope of discovery is a matter best left to the trial court's discretion.[19] In cases such as this, that discretion initially lies with the Commission. Justice Sanders was provided with a list of the residents with whom he had conversations, a list of the cases they were involved in, as well as the essence of the conversations. Names of witnesses were also provided under Commission on Judicial Conduct Rules of Procedure (CJCRP) 22(a)(2). Justice Sanders also had access to all of the testimony and cross-examined all of the witnesses at the contested hearing. There is no basis to find that Justice Sanders was denied due process.

The defendants are correct, however, when they question the standard by which the court evaluated their first motion for recusal. The standard to be employed is an objective one, not the judge's subjective view as to whether he or she can be fair and impartial in hearing the case. In Connecticut, the disqualification of judges is governed by General Statutes § 51-39 and Canon 3 (C) of the Code of Judicial Conduct. Under Canon 3 (C) (1) of the Code of Judicial Conduct "[a] judge should disqualify himself [or herself] in a proceeding in which his [or her] impartiality might *reasonably* be questioned . . . ." (Emphasis added). "Any conduct that would lead a reasonable [person] knowing all the circumstances to the conclusion that the judge's 'impartiality might reasonably be questioned' is a basis for the judge's disqualification. Thus, an impropriety or the appearance of impropriety . . . that would reasonably lead one to question the judge's impartiality in a given proceeding clearly falls within the scope of the general standard . . . ." Thode, Reporter's Notes to Code of Judicial Conduct (1973), pp. 60-61. "The question is not whether the judge is impartial in fact. It is simply whether another, not knowing whether or not the judge is actually impartial, might reasonably question his [or her] impartiality, on the basis of all of the circumstances." *Rice v. McKenzie*, 581 F.2d 1114, 1116 (4th Cir. 1978).

[18] *Deming*, 108 Wn.2d at 102-03.

[19] *Rhinehart v. Seattle Times Co.*, 98 Wn.2d 226, 232, 654 P.2d 673 (1982), *aff'd*, 467 U.S. 20, 104 S. Ct. 2199, 81 L. Ed. 2d 17 (1984).

¶15 Finally, we turn to the question of whether the sanction imposed by the Commission was proper. After a thorough review of the record, we find that the Commission correctly applied the 10 nonexclusive factors as set forth in CJCRP 6(b) and in *In re Disciplinary Proceeding Against Deming.*[20] The sanction of admonishment is appropriate and sufficient in this case.

BAKER, SWEENEY, HOUGHTON, COX, BROWN, HUNT, APPELWICK, and QUINN-BRINTNALL, JJ. PRO TEM., concur.

Reconsideration denied March 7, 2007.

[No. 76595-2. En Banc.]
Argued November 9, 2005. Decided February 1, 2007.

---

[20] 108 Wn.2d 82, 119-20, 736 P.2d 639 (1987).