IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| LANE POWELL PC, an Oregon professional corporation, | ) ) ) | No. 69837-1-I |
| Respondent, | ) ) ) | DIVISION ONE |
| v. | ) ) ) | |
| MARK DeCOURSEY and CAROL DeCOURSEY, individually and the marital community composed thereof, | ) ) ) ) | UNPUBLISHED OPINION FILED: April 21, 2014 |
| Appellants. | ) ) ) | |

BECKER, J.— Judges must recuse themselves when their impartiality may reasonably be questioned. Where an allegation of partiality rests on speculation and illogical assumptions, it is not reasonable. The appellants in this matter have not established either an appearance of unfairness or a violation of their due process right to an impartial decision maker. We therefore hold that their motion for recusal was properly denied and affirm the judgment.

The law firm of Lane Powell PC agreed to represent appellants Mark and Carol DeCoursey in their case against Windermere Real Estate S.C.A. Inc. and its agent Paul Stickney. On September 19, 2007, the DeCourseys signed a fee agreement whereby they agreed to pay Lane Powell on an hourly basis. A jury

trial took place in 2008, Judge Michael Fox presiding. On October 30, 2008, the jury returned a verdict for the DeCourseys, awarding $522,200 in damages.

The DeCourseys at this time had a large outstanding balance on fees owed to Lane Powell. On December 30, 2008, Lane Powell and the DeCourseys entered into a revised fee agreement. Lane Powell agreed to continue to represent the DeCourseys in efforts to collect on the judgment and to assist with possible appeals. The DeCourseys agreed to release $200,000 to be paid on account to Lane Powell from the $275,000 currently in their Lane Powell trust account. The remaining $75,000 was disbursed to the DeCourseys. They agreed that Lane Powell would be paid first out of any settlement proceeds or payment of any judgment. Lane Powell agreed to forbear for a "reasonable time" the collection of the balance of fees owed by the DeCourseys.

On February 27, 2009, Judge Fox entered judgment for the DeCourseys for $522,200 in damages and $463,427 in reasonable attorney fees, including a multiplier of 30 percent.

Windermere appealed. On November 28, 2010, this court affirmed. V&E Med. Imaging Servs., Inc. v. Birgh, noted at 158 Wn. App. 1027 (2010), review denied, 171 Wn.2d 1019 (2011).

Windermere filed a petition for review. On April 27, 2011, Windermere's petition for review was denied. Ultimately, the DeCourseys were awarded reasonable attorney fees on appeal at the Court of Appeals and the Supreme Court.

2

On August 2, 2011, Lane Powell e-mailed the DeCourseys to inform them that Windermere was contemplating making a payment "to cut off post-judgment interest on the amount paid while we wait for the Supreme Court to rule on the fees award, the mandate to issue, and the parties to resolve the remaining issues on remand."

On August 3, 2011, the DeCourseys fired Lane Powell and retained new counsel. That day, Lane Powell filed an attorney fee lien for $384,881.66.

On October 5, 2011, Lane Powell filed a complaint for breach of contract, quantum meruit, and foreclosure of an attorney fee lien against the DeCourseys. Lane Powell's complaint claimed $389,042.68 in fees owed as of September 10, 2011.

The case was assigned to Judge Richard D. Eadie in October 2011. The DeCourseys asserted a number of affirmative defenses and counterclaims. As the litigation progressed, the DeCourseys refused to comply with various court orders. Eventually, the court struck their affirmative defenses and counterclaims as a sanction for contempt and discovery violations.

On November 10, 2011, the DeCourseys filed a satisfaction of judgment, acknowledging receipt of $1,211,038.18 from Windermere. They arranged for Windermere to deposit into the registry of the court the sum of $384,881.66, the face amount of Lane Powell's lien, without provision for interest and without notice to Lane Powell.

On August 9, 2012, the DeCourseys moved for Judge Eadie's recusal after discovering he is married to a Windermere agent. On September 5, 2012,

Judge Eadie issued a written order denying the recusal motion on the ground that Windermere was not a party to Lane Powell's action against the DeCourseys for attorney fees:

> This case, Lane Powell v. DeCoursey, involves Plaintiff law firm's claim that Defendants have not paid the fees due Plaintiff for legal services rendered in a lawsuit involving Windermere Real Estate Company. Defendants, while they were being represented by Plaintiff, prevailed in that lawsuit and received a judgment in their favor that has now been satisfied as between Windermere and the parties to this action and concerning which all appellate remedies have been exhausted. As Plaintiff points out, both the Plaintiff and Defendants in this case were adverse to Windermere in the previous action.
>
> Plaintiff's complaint in the case before this court makes no claims for relief from Windermere, nor does the Defendants' comprehensive and detailed Answer, Affirmative Defenses and Counterclaims. The present case was when filed, and remains today, an action brought by a law firm against a former client that it contends is obligated to it for unpaid fees. Windermere is not now, and never has been a party to this action.
>
> Defendants' Motion to Vacate and Recuse is DENIED.

On October 19, 2012, Lane Powell filed a motion for summary judgment.

On November 16, 2012, Judge Eadie held a hearing on Lane Powell's motion. Judge Eadie made comments during the hearing in which he recognized that his wife's occupation as a Windermere agent was a sensitive issue and he indicated that he would re-evaluate whether deciding Lane Powell's entitlement to attorney fees would put him in a position of evaluating the Windermere litigation.[1]

Judge Eadie asked the parties to submit supplemental briefing on the reasonableness of fees that had not already been determined reasonable by either Judge Fox, the Court of Appeals, or the Supreme Court.

---

[1] Report of Proceedings (Nov. 16, 2012) at 57-58.

On November 30, 2012, Lane Powell filed its supplemental brief.

On December 4, 2012, the DeCourseys filed a second motion for recusal.

On December 6, 2012, the DeCourseys submitted their response to Lane Powell's supplemental brief.

On December 12, 2012, Judge Eadie denied the second motion to recuse.

On December 14, 2012, Judge Eadie entered an order granting Lane Powell's motion for summary judgment. The judgment was for breach of contract in the amount of $422,675.45. The judge noted on the order his finding that "Windermere Real Estate has no interest, direct or indirect, in the determination of the reasonableness of these fees or of the hourly rates charged."[2]

The DeCourseys appeal. Their primary argument is that Judge Eadie erred by denying their motions for recusal. They ask this court to reverse the judgment, vacate all orders, and remand for a new trial before a different judge.

The parties dispute the standard of review applicable to the recusal issue. The DeCourseys assert that we review the recusal issue de novo, citing In re Disciplinary Proceeding Against King, 168 Wn.2d 888, 899, 232 P.3d 1095 (2010) ("Questions as to whether undisputed facts violate due process or the appearance of fairness doctrine are legal and reviewed de novo."). Lane Powell asserts that we review the recusal issue for an abuse of discretion under Tatham v. Rogers, 170 Wn. App. 76, 87, 283 P.3d 583 (2012) ("Recusal decisions lie

---

[2] Clerk's Papers at 5526, 5527.

within the sound discretion of the trial court.") We will apply the de novo standard here.

The Code of Judicial Conduct provides that a judge must disqualify him or herself "in any proceeding in which the judge's impartiality* might reasonably be questioned." CJC 2.11(A) (The asterisk refers to the Code's definition of "impartiality.") The law goes further than requiring an impartial judge; it also requires that the judge appear to be impartial. State v. Madry, 8 Wn. App. 61, 70, 504 P.2d 1156 (1972). In determining whether recusal is warranted, actual prejudice need not be proven—a mere suspicion of partiality may be enough. Sherman v. State, 128 Wn.2d 164, 205, 905 P.2d 355 (1995). The question is whether a reasonably prudent, disinterested observer would conclude that the parties received a fair, impartial, and neutral hearing. State v. Gamble, 168 Wn.2d 161, 187, 225 P.3d 973 (2010); In re Disciplinary Proceeding Against Sanders, 159 Wn.2d 517, 524-25, 145 P.3d 1208 (2006), cert. denied, 552 U.S. 821 (2007). This test assumes that the reasonably prudent disinterested observer knows and understands all relevant facts. Sherman, 128 Wn.2d at 206.

The DeCourseys contend that a reasonably prudent, disinterested observer would conclude that Judge Eadie's marriage to a Windermere agent biased him against them because of their history of hostility to Windermere. They list the following circumstances as determinative:

- The defendants had conducted a continuing negative publicity campaign against the company that employed the trial judge's wife, and the employees of that company;
- For many years the defendants had operated, and they continued to operate during the proceedings, websites

6

which conveyed the message that company employees routinely committed illegal, unethical and deceptive acts;

- The defendants testified against the judge's wife's employer before the state legislature;
- The defendants campaigned to persuade government agencies to bring civil enforcement actions against the company; and
- The defendants themselves had successfully sued the judge's wife's employer and had obtained a judgment against it for over $1 million.[3]

The DeCourseys argue that a judge is naturally going to be biased against a party appearing before him when the judge knows the party is an antagonist of the judge's wife's employer:

It is obviously reasonable to think that the judge will react in this fashion:

- You have accused my spouse's co-workers of being crooks, cheats, felons, and unscrupulous law breakers;
- You have accused the people—such as my wife—who work for Windermere as regularly and routinely engaging in such misconduct;
- Thus you have accused my wife of being an unscrupulous, unethical, lawbreaker.

A judge who thinks a party has defamed his spouse in such a manner is going to be hard pressed to be impartial toward such a party.

*Every* objectively reasonable observer would doubt such a judge's ability to be impartial in such a case. Even putting aside the judge's reason to be economically concerned about the effect that the party's negative publicity campaign is likely to have on his wife's employer, on his wife's income, and thus on his own community property share of his wife's income—the natural human tendency to be biased against people who attack one's close family members makes it impossible for such a judge to act with the requisite appearance of impartiality.[4]

This argument assumes too much. Windermere had no interest in the litigation between the DeCourseys and Lane Powell. No reasonable person

---

[3] Br. of Appellant at 5.
[4] Br. of Appellant at 39-40.

knowing and understanding all the relevant facts would draw from the DeCourseys' hostility toward Windermere a personalized inference that the DeCourseys were accusing every single Windermere agent, including those such as Judge Eadie's wife who had no involvement in the previous litigation, of being an unscrupulous, unethical lawbreaker.

The DeCourseys further argue that the judge's failure to recuse himself violated due process because he had a personal pecuniary interest in the outcome of the case:

> Windermere employees such as the judge's wife, benefitted from a decision in favor of [Lane Powell] because it took money out of the DeCourseys' pockets, thereby reducing the funds available for their anti-Windermere campaign, which would cause Windermere to suffer a loss of customers and revenue. Thus, indirectly, the trial judge's decision caused benefits to flow to Windermere real estate brokers, such as the judge's wife, and thus to himself as well.[5]

Judges must recuse themselves when they have a direct, personal, and substantial pecuniary interest in a case. Tatham, 170 Wn. App. at 90; Tumey v. Ohio, 273 U.S. 510, 523, 47 S. Ct. 437, 71 L. Ed. 749 (1927). Even where judges have financial interests falling short of what would be considered personal or direct, due process may still require recusal. Tatham, 170 Wn. App. at 90-91; accord Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 108 S. Ct. 2194, 100 L. Ed. 2d 855 (1988).

Liljeberg shows that a trial judge's connection to a nonparty that stands to benefit financially from the judge's decision may be sufficient to require recusal. In Liljeberg, Loyola University was in talks to sell a parcel of land to Liljeberg.

---

[5] Br. of Appellant at 47.

Liljeberg intended to build a hospital on the land. To build a hospital, he needed a certificate of need from the State of Louisiana. He claimed he had a certificate of need, but Health Services Corporation filed suit for declaratory judgment against Liljeberg, asking the trial judge to find that it was the owner of the certificate, not Liljeberg. The trial judge entered judgment for Liljeberg. Several months later, Health Services Corporation discovered that the trial judge was a member of the Loyola University Board of Trustees. Health Services filed a motion to vacate under FRCP 60(B)(6). The trial judge denied the motion. The Fifth Circuit reversed, holding that the motion to vacate should have been granted. Because the success and benefit to Loyola of their negotiation with Liljeberg turned, in large part, on Liljeberg prevailing in the litigation at issue, the Supreme Court found that the judge had an obvious conflict of interest and affirmed the Court of Appeals. Liljeberg, 486 U.S. at 867-69, citing 28 U.S.C. § 455(a) ("Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.")

This case is not like Liljeberg. The conflict there was directly connected to the trial judge's ruling, in that the university with which he was allied as a trustee derived a concrete financial benefit from the judge's ruling in favor of Liljeberg. Here, the alleged conflict is speculative. The Windermere agent with whom Judge Eadie is allied through marriage did not derive any concrete benefit from Judge Eadie's ruling in favor of Lane Powell.

9

To establish that Judge Eadie had a pecuniary interest in the outcome of this case, the DeCourseys ask this court to assume that (1) if the DeCourseys prevailed against Lane Powell and did not have to pay a judgment for attorney fees, they would have more money with which to finance their anti-Windermere campaign and (2) their expenditures in that regard would necessarily result in a loss of business by Mrs. Eadie, a Windermere agent.

The record simply does not support the existence of a chain of causation by which an order requiring the DeCourseys to pay their bill to Lane Powell ends up benefitting the Eadies financially. The possible benefit is too speculative and attenuated to constitute a personal pecuniary interest requiring recusal.

We conclude that the trial judge did not violate the DeCourseys' due process right to a trial before an impartial decision maker.

As an alternative basis for seeking reversal of the summary judgment for attorney fees, the DeCourseys contend that they did not breach their contract with Lane Powell. They claim their nonperformance of the contract to pay attorney fees was excused because Lane Powell repudiated it. It is not clear that this issue is properly before us because the trial court struck the DeCourseys' defenses as a sanction and they have not appealed that order. The argument also fails when considered on the merits.

In December 2008, Lane Powell negotiated with the DeCourseys the terms by which the firm would forbear collecting the attorney fees due under the hourly fee agreement. In a letter dated December 5, 2008, attorney Brent Nourse proposed that Lane Powell would forbear collection until Windermere

paid the judgment. According to the DeCourseys, the letter of December 5 was the contract, and Lane Powell repudiated it by filing suit on October 11, 2011, one month before Windermere paid the judgment. However, the record reflects that the actual contract revising the fee agreement was a subsequent letter from Lane Powell to the DeCoursey dated December 31, 2008, that was signed by both the DeCourseys. That agreement required Lane Powell to forbear for "a reasonable time." Lane Powell filed suit four years after winning the case for the DeCourseys and two years after being fired by the DeCourseys. This was a reasonable time to forbear collection efforts, and the DeCourseys do not argue otherwise. In their reply brief, they contend the December 31 letter was too vague to be a contract. We decline to address this argument. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

The trial court did not err in concluding there were no material issues of fact warranting trial on Lane Powell's claim of breach of contract.

Affirmed.

Becker, J.

WE CONCUR:

11