*CJP Supp. 292 Opinion
McCONNELL, Vice-chairperson.
I
INTRODUCTION AND SUMMARY
This disciplinary matter concerns Judge Kelly A. MacEachern, a judge of the Orange County Superior Court since 2003. The commission commenced this inquiry with the filing of its notice of formal proceedings (Notice) on August 13, 2007.
The Notice charges Judge MacEachern in one count with making intentionally false and misleading statements in an e-mail to the superior court travel coordinator in support of her reimbursement claim for hotel expenses associated with her attendance at the Continuing Judicial Studies Program (CJSP) in San Diego the week of July 31, 2006. Judge MacEachern is charged with making the following false and misleading statements: (1) there was a “mix up” in her registration when she arrived at the conference; and (2) she “sat in” on two classes on days for which she sought hotel reimbursement. The *CJP Supp. 293 Notice alleges there was not a mixup with her registration—when she arrived at registration, she knew she was only registered for one half-day class later in the week; and, she did not attend the two classes she claimed to have “sat in” on.
The Supreme Court appointed three special masters to hear and take evidence and report to the commission under Rules of the Commission on Judicial Performance, rule 129. (All references to a rule are to the Rules of the Commission on Judicial Performance.) The masters are Hon. Judith Ashmann-Gerst, Associate Justice of the Court of Appeal, Second Appellate District; Hon. Tani G. Cantil-Sakauye, Associate Justice of the Court of Appeal, Third Appellate District; and Judge George J. Abdallah, Jr., Judge of the San Joaquin County Superior Court.
The three masters held a two-day hearing in January 2008, followed by an oral argument in March 2008. The masters’ report to the commission, containing their detailed findings of fact and conclusions of law, was filed with the commission on March 17, 2008.
The masters concluded Judge MacEachern engaged in willful misconduct by deliberately making false and misleading representations concerning her registration and attendance at CJSP to obtain court funds to which she was not entitled. They resolved credibility issues and factual disputes, finding Judge MacEachern’s testimony was not credible on material issues. We base our decision to remove Judge MacEachern from office on the masters’ factual findings and legal conclusions, as adopted and discussed in this decision. The lack of integrity manifested by her misconduct, compounded by her lack of candor in response to the commission’s investigation and deceitful testimony under oath before the masters, compels our conclusion that removal is necessary to protect the public and maintain public trust in the integrity of the judiciary.
Judge MacEachern is represented by Attorneys Edward P. George of Long Beach, California, and Paul S. Meyer of Costa Mesa, California. The examiners for the commission are Commission Trial Counsel Jack Coyle and commission assistant trial counsel Valerie Marchant.
II
FINDINGS OF FACT AND CONCLUSIONS OF LAW
A. Findings of Fact
The examiner has the burden of proving the charges by clear and convincing evidence. (Broadman v. Commission on Judicial Performance (1998) 18 *CJP Supp. 294 Cal.4th 1079, 1090 [77 Cal.Rptr.2d 408, 959 P.2d 715] (Broadman).) “Evidence of a charge is clear and convincing so long as there is a ‘high probability’ that the charge is true.” (Ibid.) Factual findings of the masters are entitled to great weight because the masters have “the advantage of observing the demeanor of the witnesses.” (See ibid.; Inquiry Concerning Freedman (2007) No. 179, Decision and Order Imposing Public Censure, pp. 7, 20 [49 Cal.4th CJP Supp. 223, 232, 243] (Freedman).) The following facts are adopted from the masters’ factual findings which we have determined are supported by clear and convincing evidence based on our own review of the record.

Registration for the Seminar

During the week of July 31, 2006, through August 4, 2006, the Center for Judicial Education and Research (CJER) of the Administrative Office of the Courts (AOC) sponsored CJSP, a judicial education seminar, in San Diego, California. Because Judge MacEachern was on medical leave, she asked her clerk, Felicia Bicknell (Bicknell), to register her for the seminar, but did not instruct Bicknell to sign her up for any particular classes. On June 16, 2006, the registration deadline, Bicknell applied online for two courses: (1) Excellence in Judging, held Monday, July 31, 2006, through the morning of Wednesday, August 2, 2006; and (2) Statement of Decision, held in the afternoon of Wednesday, August 2, 2006.
An e-mail response was sent from AOC to Judge MacEachern on the same day. It stated, in relevant part: “This is only a confirmation that your CJSP application has been received by CJER. [f] Notification of acceptance into your course choice(s) will be sent via e-mail the week following the June 16 application deadline. You will receive further information regarding travel arrangements with your acceptance confirmation. We ask that you do not make hotel or airline reservations until you have received your Acceptance Email.” (Original boldface.)
On June 20, 2006, the day after returning to work, Judge MacEachern submitted a “Judicial Officer’s Planned Absence” form, indicating she planned to be away from the court attending CJSP the entire week of July 31, 2006. The next day, Judge MacEachern was informed by AOC Attorney Bonnie Pollard (Pollard) via e-mail that she had been accepted only into the half-day Statement of Decision class on Wednesday afternoon. She was denied admittance into the Excellence in Judging class because it was designed for judges with at least eight years’ experience on the bench, and she had been a judge for less than four years at the time.
Pollard’s e-mail included an attached participant’s manual which provided information on hotel accommodations. The manual stated that AOC would *CJP Supp. 295 pay the hotel directly for “lodging only for the nights stated in [the] confirmation email . . .” and only “for judicial officers . . . who attend the entire course in which they are enrolled.” (Original boldface.) “Attending entire course” was defined as “arriving before the course begins and staying until the course officially ends.” Specifically, the e-mail provided: “Those who do not attend the entire course will remain individually responsible for their own lodging expense.”
On June 22, 2006, the day after receiving her e-mail confirming admittance into only one half-day class, Judge MacEachern was notified by a court administrative assistant that her educational leave request for the entire week of July 31st had been approved. The same day, court travel coordinator Rick Valadez (Valadez) prepared a travel request for the judge which estimated expenses for meals and incidentals for five days. It did not include hotel costs because they were paid directly by CJER. Judge MacEachern signed the travel request and returned it to Valadez. It was then approved by Presiding Judge Nancy Wieben Stock. Judge MacEachern did not inform Judge Stock or Valadez that she had been admitted only to one half-day class or seek to amend her request for an entire week of educational leave. On June 28, 2006, Judge MacEachern made reservations at one of the hotels approved by the AOC for five nights, Sunday, July 30, 2006, through Friday, August 3, 2006.
Sometime before CJSP began, Judge MacEachern telephoned Pollard to inquire about her registration status. They discussed what classes remained open. Judge MacEachern was not interested in any of the classes that had openings, but did express interest in the Evidence class, which was full. Judge MacEachern was placed on the wait list for the Evidence class.
On the Friday before the start of the program, Judge MacEachern contacted CJSP Education Coordinator Susan Gordon (Gordon) to inquire whether there was an opening in the Evidence course. Gordon told her that there were no openings, but she remained on the wait list.

Judge MacEachern’s Activities During the Week of CJSP

On Sunday, July 30, 2006, Judge MacEachern went to San Diego with her husband, Michael Bruce McClellan (McClellan), and his twin seven-year-old daughters. This was McClellan’s one week of the year to have his daughters for vacation. They checked into one of the hotels approved by AOC for lodging during the program.
Judge MacEachern arrived at registration around 7:45 a.m. on Monday, July 31, 2006, the first day of CJSP. Gordon was surprised to see the judge since she was not enrolled in any course until Wednesday. At the registration *CJP Supp. 296 table, Judge MacEachern spoke with Aline Tashjian (Tashjian), the senior conference coordinator for the AOC. Judge MacEachern told Tashjian that she wanted to sit in on a class she was not enrolled in. When told this was not permitted, Judge MacEachern responded that she would sit in the class anyway.
According to Judge MacEachern, despite being denied admission to the class, she went to the Excellence in Judging classroom anyway. She claims that she arrived before 8:30 a.m. to “scope out” whether she could get in. Judge MacEachern testified that she stayed in the classroom for 10 to 15 minutes and left shortly after the class started. Pollard arrived at the Excellence in Judging classroom around 8:00 a.m. to check on the room setup and see if faculty needed assistance. When the class started about 8:30 a.m., the door was closed. During the next five or 10 minutes, the team leaders presented an overview of the class. Pollard testified that no one came in or out of the classroom between the time the door was closed and the end of the overview. No judge approached Pollard about being admitted into the class.
The masters found, “in no uncertain terms” that Judge MacEachern lied about going into the Excellence in Judging classroom. We adopt this credibility finding. Pollard’s testimony contradicts Judge MacEachern’s testimony that she remained in the classroom after the class started. Moreover, the masters were in a position to listen to the judge and observe her demeanor when she testified about specifics of being in the classroom and did not find her credible.
Judge MacEachern returned to the registration area at around 8:45 a.m. and spoke with Gordon about whether there had been any cancellations in the Evidence class. Gordon told her she would have to wait 30 to 60 minutes to determine if there were openings in the class and urged Judge MacEachern to check back in with her later that morning. Judge MacEachern did not return or make further inquiries about the Evidence class. As it turned out, Judge MacEachern probably would have gotten into the class had she returned because there were two openings in the class.
At her appearance before the commission, Judge MacEachern said she did not hear Gordon tell her to come back because she was so angry about being denied admittance into the Evidence class. We believe Judge MacEachern disregarded Gordon’s instruction, just as she disregarded other directions from the AOC staff.
Judge MacEachern admits Gordon specifically told her she could not just “sit in” on a class unless admitted. Despite this clear instruction, Judge MacEachern claims she went to the Evidence classroom after speaking with *CJP Supp. 297 Gordon.[1] She testified that she sat in the classroom for 15 or 20 minutes until Gordon “stuck her head” in the room. Judge MacEachern explained that she left because she was afraid she would make Gordon mad. The masters concluded: “We do not believe that she was intimidated by Gordon’s momentary entrance into the classroom. In fact, MacEachern should have expected Gordon to appear in the Evidence class to verify attendance, given that Gordon had requested MacEachern check back at registration to see if there were any absences in the class. Rather, MacEachern’s actions and statements evince her disrespect for, not fear of, AOC staff.” We concur.
At some point on Monday or Tuesday morning, Judge MacEachern enrolled in a half-day Introduction to Microsoft Word and Windows course, scheduled for Tuesday, August 1, 2006. She attended that class in the morning, and joined her husband and his daughters for kayaking and paddle boating in the afternoon.
On Wednesday, August 2, 2006, Judge MacEachern attended the half-day Statement of Decision class.
Judge MacEachern claims to have “sat in” on the Domestic Violence (DV) Workshop on Thursday, August 3, 2006. The two-day workshop started on Wednesday and was an invitation-only course, designed to train judges to be instructors on the subject. Judge MacEachern testified she arrived at the classroom between 8:00 a.m. and 8:30 a.m. and stayed for about 15 to 20 minutes, during which time there were small-group discussions. In unequivocal terms, the masters found Judge MacEachern lied about even entering the DV Workshop classroom. We adopt this finding. Two witnesses who know Judge MacEachern and were in the DV Workshop classroom Thursday morning did not recall seeing her. AOC Attorney Bobbie Welling, who was sitting near the door observing the class, testified that she would have noticed if anyone had entered the classroom. Orange County Superior Court Judge Eric Larsh was one of 12 participants in the class. He spoke with Judge MacEachern at a break outside the classroom Thursday morning, but never saw her enter the classroom. In further support of the masters’ finding that Judge MacEachern was never in the classroom, we note that Judge MacEachern was uncertain of most of the details concerning her alleged time in the classroom, including what time she arrived, whether class had started, whether the door was open or shut, whom she talked to, and what subject was being discussed.
Judge MacEachern testified that after leaving the DV Workshop, she sat in the back of the Selected Civil Topics class for about 20 to 30 minutes on *CJP Supp. 298 Thursday morning, but left and returned to her hotel because she could not follow the discussion without the materials.
Judge MacEachern did not go to CJSP at all on Friday, August 4, 2006. According to Judge MacEachern, they drove home after checking out of their hotel in the morning; according to her husband, they spent the day at Sea World. Judge MacEachern made no effort to see if she was needed in court that day or change her day off on Friday from educational leave to vacation time.
McClellan testified that in addition to going to Sea World on Friday, the judge participated in many other activities with him and his children during the week. They visited a mission; they went to the San Diego Zoo; they rented a kayak and a paddle boat; and they visited a nature preserve.

Judge MacEachern’s Travel Reimbursement Request and E-mail

Shortly after CJSP ended, Judge MacEachern submitted a travel reimbursement claim to Valadez asking the court to reimburse her for three nights of hotel expenses and meals from dinner on Sunday through lunch on Friday. Valadez contacted Judge MacEachern and CJER about the claim, because it was his understanding that CJER directly paid hotel expenses. In his e-mail to the judge, sent the afternoon of August 14, 2006, he wrote:
“Good afternoon your Honor,
“I was reviewing your reimb. claim for the conf. above and I had a few questions.
“I show that you were scheduled to attend Excellence in Judging Mon-Wed. AM and Statements ... in the PM. It looks like CJER only picked up Tues. night. However, the hotel charged you for 4 other nights? I sent CJER a message to see if they can research if they were supposed to pick up the other nights or if the hotel made a mistake with the registration?
“If you know any other info, please let me know so that I can piece your reimb. claim with the Conf.
“thank you.”[2]
*CJP Supp. 299 Not having received a response from Judge MacEachern, Valadez sent a followup e-mail the next afternoon. In this e-mail, he wrote:
“Good afternoon your Honor,
“I wanted to update you with regards to your claim. I spoke with Susan Gordon (CJER Coord) and she informed me that your class schedule was for a computer class in the AM and a Statements of Decision in the PM Wed. 8/2. Since that was the only class you attended CJER only covered one night (8/1 Tues.). Hence, the charges on your credit card for 7/30-31 and 8/2-4.
“The court will reimb. you for mileage r/t 180 miles and dinner for 8/1+2.
“Please let me know if this looks ok or if I’m missing any other info, to add to your reimb. claim from the court?
“thank you.”
Judge MacEachern replied the next morning with the following e-mail, which is the subject of this inquiry:
“Dear Rick,
“When I got to the CJSP it turned out there was a mix up with my registration. SOI just sat in on the judicial excellence class on Monday, They allowed me to attend a Tuesday a.m. computer class, and the Wednesday afternoon S.O.D. class., [szc] and I sat in on the Thursday a.m. D.V. class. I attended no classes on Friday. I know they won’t cover any other nights, however I was hoping the [cou]nty would. Thank you for your help. JKM”
Valadez e-mailed Gordon inquiring whether CJER would cover hotel expenses for the three nights requested by Judge MacEachern. Gordon responded in an e-mail that CJER would pay for Monday night’s hotel stay because Judge MacEachern had attended the Tuesday computer class.[3] However, Gordon informed Valadez that CJER would not cover Sunday and Wednesday night because the judge had not enrolled in or attended entire courses on Monday or Thursday. Gordon added: “I am not sure what she means by ‘a mix up with my registration’—I was very clear with her on the Friday before that she was still waitlisted in her first choice course— *CJP Supp. 300 Evidence in Civil and Criminal Cases—so the fact that she showed up on Monday morning was quite a surprise.”
Based upon Judge MacEachern’s representation in her e-mail that she had “sat in” on classes on Monday and Thursday, Valadez submitted an amended travel reimbursement request form to Judge Stock on August 17, 2006. The amended request sought hotel reimbursement for $220, for two nights, Sunday and Wednesday.

Judge Stock’s Investigation and Meeting with Judge MacEachern

Presiding Judge Stock had concerns about Judge MacEachern’s representation that she had “sat in” on the Excellence in Judging class. Having been on the faculty for the class, Judge Stock knew it was not the type of class a judge can audit. Based on those concerns, she had her executive assistant conduct an investigation into Judge MacEachern’s expense reimbursement claim. Judge Stock also asked her assistant to schedule a meeting with Judge MacEachern.
The meeting was held on September 8, 2006. At Judge Stock’s request, Judge Thierry Colaw, a member of the court’s executive committee, was present. Judge MacEachern appeared surprised when told the purpose of the meeting. Due to the confidential nature of the subject, Judge Stock had not informed her assistant, who arranged the meeting, of its purpose. Judge Stock went through the events of the week with Judge MacEachern who acknowledged that she was registered only for a half-day class on Wednesday when she arrived at CJSP on Monday. Judge MacEachern indicated that she had briefly “sat in” on the Excellence in Judging and DV Workshop courses, but quickly realized they were not appropriate for her and left. Judge Stock told Judge MacEachern that it appeared her statements to Valadez in the August 16 e-mail were misleading. Judge MacEachern acknowledged that her statements could be misleading and convey a false impression. She agreed to withdraw her claim for hotel reimbursement and convert her educational leave to vacation leave for the days that she did not attend any classes.
At the time of her meeting with Judge Stock, Judge MacEachern was exhausted and emotionally drained because her husband had been hospitalized three days earlier and was in dire condition. Judge MacEachern continued to work while her husband was in the hospital and did not mention her husband’s condition to Judge Stock.

Judge MacEachern’s Intent

The masters found Judge MacEachern made intentionally false and misleading statements in her August 16 e-mail to Valadez. Specifically, the *CJP Supp. 301 masters found the following statements to be intentionally false and misleading: (1) “When I got to the CJSP it turned out there was a mix up with my registration”; and (2) “I just sat in on the judicial excellence class on Monday” and “I sat in on the Thursday a.m. D.V. class.” In her testimony, Judge MacEachern insisted that these statements were not intended to mislead, but were the result of a hastily drafted and carelessly worded e-mail. The masters emphatically rejected this testimony, finding her word choice was “calculated, not careless.” We concur and adopt this finding.
First, the evidence is undisputed that there was no mixup with her registration when Judge MacEachern got to CJSP. She was registered for the same class when she arrived at CJSP on Monday morning as when she left to drive to San Diego for the conference. In fact, Judge MacEachern was informed on the Friday before the conference began that she was enrolled only in the Wednesday Statement of Decision half-day class and was still on the wait list for the Evidence class. Thus, the statement “When I got to the CJSP . . . there was a mix up with my registration” is false.
Judge MacEachern insists she did not intend to imply that there was any mistake or confusion in her registration when she arrived at the conference. She testified that the “mix up” she was referring to was her clerk’s error in signing her up for a class she was not qualified to attend. This explanation is nonsensical when viewed in the context of the antecedent phrase, “[w]hen I got to the CJSP it turned out’ (there was a mixup with my registration). (Italics added.) We agree with the masters that her use of this phrase “constitutes a calculated attempt to suggest that any ‘mix up’ occurred upon her arrival at the program” to explain why she came to San Diego on Sunday even though her first class was not until Wednesday.
Judge MacEachern’s explanations for her use of the phrase “sat in” are equally unconvincing. She testified that she never meant to suggest to Valadez that she attended or participated in the entire Excellence in Judging or DV Workshop classes. Instead, she maintains, she used the phrase “sat in” to signify that she briefly observed the classes or had made “sincere but failed efforts” to get into the classes. The masters found, “her defense of this patently misleading statement not only lacks credibility, but also borders on ludicrous.” We concur.
In defense of her statement, Judge MacEachern has offered the masters and the commission no less than three alternate and inconsistent definitions of the phrase “sat in”: (1) She physically sat down in a chair. (“I did sit down in the judicial excellence class ... for about 10-15 minutes. I never intended to say I took the whole class, but I did sit down in it.”) (2) She observed the class long enough to get a feel for and objectively examine the class. (3) She made a sincere but failed effort to get into several additional classes.
*CJP Supp. 302 In our view, there is only one reasonable interpretation of the phrase “sat in” when made in the context of a reimbursement claim related to a judicial educational seminar. As noted by the masters, the commonsense, ordinary definition of the phrase “sat in” “suggests that she participated in or observed a particular class for its duration; she audited the class.” Judge MacEachern’s parsing of the phrase tortures its ordinary, commonsense meaning. Valadez could not possibly have been expected to understand the judge’s representation that she “sat in” on classes to mean anything other than that she attended the classes in their entirety. And, this is precisely what Judge MacEachern wanted him to think.
We concur with the masters’ finding that Judge MacEachern offered contrived definitions to explain away misleading statements in her e-mail to Valadez. As an educated woman with over 20 years in the legal profession, Judge MacEachern had to know that a representation that she “sat in” on classes would not be interpreted to mean she literally sat in a chair or made a brief entrance into the classroom without deriving any educational benefit. Notably, Judge MacEachern did not inform Judge Stock or Valadez that she meant anything other than the ordinary meaning of the phrase “sat in” when her reimbursement claim was questioned.
Moreover, Judge MacEachern did not mention that she “sat in” on the Evidence and Civil Topics classes in her e-mail to Valadez, even though she testified to having briefly observed both classes. Of course, by doing so she would have alerted Valadez to the fact that she did not attend the entire Excellence in Judging or DV Workshop courses since she could not be in two places at once (the Evidence and Excellence classes were in session at the same time Monday morning and the DV Workshop and Civil Topics classes were in session at the same time Thursday morning). The masters query why she did not mention these other classes in her e-mail if she really intended the phrase “sat in” to signify a brief entrance into the classroom or a “sincere but failed effort” to attend a class. They conclude: “The answer is obvious: MacEachern lied, got caught, and created a self-serving definition to attempt to escape from her lie. We simply cannot accept her sophistry and manipulation of ordinary words and phrases to circumvent quite obvious wrongdoing.” This finding is amply supported by the evidence, and is adopted as our own.
Judge MacEachern attempts to justify her word choice as being the result of a quickly drafted e-mail that she “dashed” back in response to Valadez without thought or deliberation. The masters considered and rejected Judge MacEachern’s testimony in this regard, finding her “word choice was calculated, not careless.” We adopt the masters’ credibility determination. As previously discussed, the precise words used in the e-mail manifest a calculated attempt to mislead. Further, Judge MacEachern had ample time to *CJP Supp. 303 consider her response to Valadez’s e-mails. Valadez sent two e-mail inquiries concerning the judge’s reimbursement claim, one at 3:10 p.m. on August 14, 2006, and when he had not received a response, a second at 4:42 p.m. on August 15, 2006. Judge MacEachern’s response was sent at 9:52 a.m. on August 16, 2006.
In her testimony before the masters and for the first time in this inquiry, Judge MacEachern suggested that her word choice was the result of undiagnosed medical conditions, including temporary dyslexia and aphasia she allegedly experienced after a recent surgery. No medical documentation or expert testimony was admitted to substantiate that she suffered from these conditions or that they contributed in any way to her choice of words. As such, we reject any suggestion that there is a medical explanation for her false and misleading statements.
Significantly, none of the justifications proffered by Judge MacEachern explain how she could have “sat in” on classes when she never entered the classrooms. As previously discussed, we have adopted the masters’ finding that she did not go into or briefly observe either the Excellence in Judging class or DV Workshop.
In conclusion, we adopt the masters’ finding that Judge MacEachern intentionally made deceptive and misleading statements in her August 16 e-mail to Valadez which falsely suggested that she arrived at CJSP on Sunday because of a mixup in her registration and audited the Excellence in Judging class and DV Workshop. She made these statements in an attempt to obtain reimbursement from the government for costs to which she was not entitled.
B. Conclusions of Law
The masters and we conclude that Judge MacEachern engaged in willful misconduct, the most serious basis for censure or removal. (Cal. Const., art. VI, § 18, subd. (d).) Willful misconduct is (1) unjudicial conduct that is (2) committed in bad faith (3) by a judge acting in his or her judicial capacity. (Broadman, supra, 18 Cal.4th at p. 1091.)
First, Judge MacEachern’s conduct was manifestly unjudicial. Failure to comply with the California Code of Judicial Ethics is generally considered to constitute unjudicial conduct. (Dodds v. Commission on Judicial Performance (1995) 12 Cal.4th 163, 172 [48 Cal.Rptr.2d 106, 906 P.2d 1260] (Dodds).) Judge MacEachern violated fundamental precepts of the canons. She failed to comply with her duty to uphold the integrity of the judiciary (canon 1), avoid impropriety and the appearance of impropriety in all of her activities (canon 2), and comply with the law and act in a manner that promotes public *CJP Supp. 304 confidence in the integrity of the judiciary (canon 2A). Further, by fraudulently seeking reimbursement from the court for her own pecuniary or personal interests she violated canon 2B (judge shall not lend the prestige of judicial office to advance the pecuniary or personal interests of the judge or others). Judge MacEachern used her position as a judge to ask the court’s travel coordinator to submit a request on her behalf seeking reimbursement for expenses to which she was not entitled.
Second, Judge MacEachern acted in bad faith. A judge acts in bad faith “only by (1) performing a judicial act for a corrupt purpose (which is any purpose other than the faithful discharge of judicial duties), or (2) performing a judicial act with knowledge that the act is beyond the judge’s lawful judicial power, or (3) performing a judicial act that exceeds the judge’s lawful power with a conscious disregard for the limits of the judge’s authority.” (Broadman, supra, 18 Cal.4th at p. 1092.) The e-mail statements were made in bad faith because their purpose was improper. As the masters state: “It goes without saying that making false representations to the court in order to obtain money reflects a corrupt purpose.”
In her briefs to the commission, Judge MacEachern maintains that she was not motivated by greed, but by an unwarranted sense of entitlement. She thought traveling to San Diego and attempting to enroll in additional classes entitled her to reimbursement even though she did not get into or attend those classes. However, this is not what she told Valadez; rather, she falsely suggested that she had attended the additional classes.
The masters concluded that the judge’s “haughty sense of entitlement to reimbursement” further evinces her bad faith. We agree. However, we need not decide whether Judge MacEachern’s motivation in seeking reimbursement was monetary or an unwarranted sense of entitlement. In either event, she acted for a purpose other than the faithful discharge of her judicial duties. Conference materials clearly informed her that she was entitled only to hotel reimbursement for those days she attended classes in their entirety. Further, common sense and good judgment should have alerted her that her reimbursement request was unjustified under her theory of entitlement. We fail to understand how Judge MacEachern could have thought she was entitled to reimbursement for hotel expenses and meals for appearing at the conference site and making unsuccessful inquiries about enrolling in additional classes or, more importantly, how this provided her license to mislead Valadez. Judge MacEachern acted in bad faith by sending a deceitful e-mail in support of her reimbursement claim, regardless of whether her motivation was monetary or an unjustified sense of entitlement.
Third, Judge MacEachern was acting in her judicial capacity, the final element of willful misconduct. A judge acts in a judicial capacity “while *CJP Supp. 305 performing one of the functions, whether adjudicative or administrative in nature, that are associated with the position of a judge or when the judge uses or attempts to use the authority of the judicial office for an improper purpose.” (Broadman, supra, 18 Cal.4th at p. 1104, citing Dodds, supra, 12 Cal.4th at p. 172.) The masters concluded and we agree that Judge MacEachern’s e-mail meets this test because it was sent in her administrative capacity as a judge and because she used her authority as a judicial officer to ask Valadez to submit a claim for reimbursement to which she knew she was not entitled.
Judge MacEachern contends that she was not acting in a judicial capacity because the e-mail pertained to a personal matter, and did not relate to a case or any matter involving her assignment. The e-mail did not pertain to a personal matter—it concerned court reimbursement for attendance at a judicial conference. It was sent to the court travel coordinator, during court hours, on the court’s e-mail system, from the courthouse. The form she submitted to Valadez is entitled “Judicial Officers Travel Reimbursement Worksheet.” This was clearly an administrative judicial function.
In removing Judge Hyde from office, the commission concluded that he was acting in his judicial capacity when he asked his clerk to access restricted Department of Motor Vehicles records for personal reasons. (Inquiry Concerning Hyde (2003) No. 166, Decision and Order Removing Judge Hyde from Office, p. 5 [48 Cal.4th CJP Supp. 329, 339] (Hyde); see also Inquiry Concerning Murphy (2001) No. 157, Decision and Order Imposing Censure and Bar, pp. 16-17 [48 Cal.4th CJP Supp. 179, 201] (Murphy) [false statements to presiding judge to obtain sick leave rather than taking personal leave made in judicial capacity]; Inquiry Concerning Couwenberg (2001) No. 158, Decision and Order Removing Judge Couwenberg from Office, p. 12 [48 Cal.4th CJP Supp. 205, 221-222] [false statements on form used exclusively for judges in connection with public enrobing ceremonies and other administrative purposes made in judicial capacity].) The commission reasoned: “Judge Hyde did not give Ms. Silva advice, but made a request as a judge to a clerk to perform a task that was a normal duty for a clerk. Ms. Silva could not reasonably have been expected to refuse.” (Hyde, No. 166 at p. 5 [48 Cal.4th CJP Supp. at p. 339].) Similarly, Judge MacEachern made a request for hotel reimbursement to the judicial travel coordinator who was charged with processing judicial travel reimbursement requests. As Judge Stock testified at the hearing concerning Mr. Valadez and other court staff: “They essentially believe what we tell them. They rely upon our integrity . . . .”
Judge MacEachern relies heavily on Dodds, supra, 12 Cal.4th 163, in which the Supreme Court held the judge was not acting in a judicial capacity *CJP Supp. 306 when he failed to report a colleague whom he observed deflate a van tire in the court parking lot, and initially refused to give a statement to an investigating officer and suggested that his staff also refuse to talk. In reaching this conclusion, the Supreme Court first emphasized that Judge Dodds was not acting as a supervisor when he recommended to staff that they decline to give a statement; rather, he was giving advice to a cowitness concerning an event he witnessed outside of his judicial function. (Id. at p. 175.) Second, the court noted that the judge met with the detective at the courthouse only because it was a convenient meeting place that the detective selected. (Ibid.) In this case, Valadez was seeking information necessary to perform his job as the travel coordinator for the court. Judge MacEachern was not offering discretionary advice to Valadez, but information required for the purpose of processing her reimbursement claim. Moreover, unlike the detective in Dodds, Valadez contacted the judge during work hours over the court’s e-mail system not because it was convenient but because his inquiry was related to an administrative judicial function.
As did the masters, we conclude Judge MacEachern engaged in willful misconduct by sending an intentionally deceitful e-mail in an attempt to obtain court funds to which she was not entitled.
HI
DISCIPLINE
A. Introduction
In this case, we face the question of whether a judge who engages in an act of materially deceitful and fraudulent conduct in her judicial capacity and subsequently responds to the commission’s investigation by parsing words, and offering disingenuous defenses and false testimony should remain in judicial office. The purpose of a commission disciplinary proceeding “ ‘is not punishment, but rather the protection of the public, the enforcement of rigorous standards of judicial conduct, and the maintenance of public confidence in the integrity and independence of the judicial system.’ ” (Broadman, supra, 18 Cal.4th at p. 1112, quoting Adams v. Commission on Judicial Performance (1995) 10 Cal.4th 866, 912 [42 Cal.Rptr.2d 606, 897 P.2d 544] (Adams).) Faithful adherence to these objectives compels our decision to remove Judge MacEachern from office. As discussed below, Judge MacEachern engaged in wrongdoing that seriously undermines the integrity of the judiciary and falls far short of the rigorous standards to which the judiciary is held.
*CJP Supp. 307 B. Analysis of Disciplinary Factors
In reaching our decision, we have considered those factors previously identified by the commission as relevant to determining the appropriate discipline in a given case. (Inquiry Concerning Ross (2005) No. 174, Decision and Order Removing Judge Ross from Office, pp. 63-64 [49 Cal.4th CJP Supp. 79, 137-138] (Ross); Inquiry Concerning Van Voorhis (2003) No. 165, Decision and Order Removing Judge Van Voorhis from Office, p. 31 [48 Cal.4th CJP Supp. 257, 295].) At the outset, it should be noted that removal may be appropriate even where these factors do not each weigh against the judge. (Murphy, supra, No. 157 at p. 18 [48 Cal.4th CJP Supp. at p. 202].)
1. Number of Acts of Misconduct
The number of acts of misconduct is relevant to discipline to the extent it shows isolated incidents, or a pattern that demonstrates that the judge lacks judicial temperament and the “ability to perform judicial functions in an even-handed manner.” (Fletcher v. Commission on Judicial Performance (1998) 19 Cal.4th 865, 918 [81 Cal.Rptr.2d 58, 968 P.2d 958] (Fletcher)) “A level of discipline may be warranted either by the existence of a pattern of misconduct or by the seriousness of a single incident.” (Broadman, supra, 18 Cal.4th at pp. 1112-1113.) Consideration of this factor might militate against removal if it were not for the corrupt nature of the misconduct and pervasive lack of candor during these commission proceedings, which combined demonstrate a temperament lacking the core qualities required of a judge.
2. Integrity and Honesty
“Honesty is a minimum qualification for every judge. (Kloepfer v. Commission on Judicial Performance (1989) 49 Cal.3d 826, 865 [264 Cal.Rptr. 100, 782 P.2d 239] (Kloepfer)) If the essential quality of veracity is lacking, other positive qualities of the person cannot redeem or compensate for the missing fundamental. (Ibid)” (Inquiry Concerning Hall (2006) No. 175, Decision and Order Removing Judge Hall from Office, p. 26 [49 Cal.4th CJP Supp. 146, 171] (Hall)) Judges have been removed from office for providing false and misleading information in other contexts.
Judge Hall was removed from office for violating campaign finance and disclosure laws, including knowingly filing false declarations under penalty of perjury concerning the source of a $20,000 campaign donation. Although Judge Hall engaged in additional incidents of misconduct, it was the election fraud which compelled our removal decision. (Hall, supra, No. 175 at p. 29 [49 Cal.4th CJP Supp. at p. 173].)
*CJP Supp. 308 In 2001, we voted to remove Judge Murphy from office for providing false and misleading information in support of his request for sick leave.[4] Judge Murphy took extensive medical absences from court, providing false information about his health to his presiding judge. While on sick leave, he taught evening law classes and took prerequisite classes for admission to medical school, among other activities. (Murphy, supra, No. 157 at pp. 4-15 [48 Cal.4th CJP Supp. at pp. 185-199].) We observed, the “public will not, and should not, respect a judicial officer who has been shown to have repeatedly lied for his own benefit.” (Id. at p. 18 [48 Cal.4th CJP Supp. at p. 202].)
Judge Couwenberg was ordered removed from office in 2001 for providing materially false information concerning his educational, professional, and military background in seeking appointment to the bench and as a judge. (Inquiry Concerning Couwenberg, supra, No. 158, Decision and Order Removing Judge Couwenberg from Office [48 Cal.4th CJP Supp. 205].)
Judicial disciplinary decisions from other states in cases involving similar misconduct can also provide guidance. Following the recommendation of the Commission on Judicial Conduct, the Washington Supreme Court removed Judge Ritchie from office for filing false or misleading travel "vouchers on four occasions over a five-year period. (In re Disciplinary Proceedings Against Ritchie (1994) 123 Wn.2d 725 [870 P.2d 967].) The travel voucher “contained false and misleading statements concerning the nature, purpose, duration and benefit of the court-related business allegedly conducted during the trips.” (Id., 870 P.2d at pp. 970-971.)
In a case involving one false sworn affidavit, the South Carolina Supreme Court approved a stipulated one-year suspension of a judge from office without pay. (In re Augustus (2006) 367 S.C. 364 [626 S.E.2d 346],)[5] Judge Augustus claimed on a notarized continuing education compliance report that he had attended all three days of a seminar when he only had attended one day. Initially, he told South Carolina’s disciplinary counsel that he attended two days of the seminar. Subsequently, the judge sent a letter to the disciplinary counsel admitting that he only attended one day.
Judge MacEachern contends that the weight of precedent does not support removal because she engaged in an isolated act of misconduct. The Supreme Court and this commission have recognized that in determining the appropriate discipline, each case must be considered on its own facts. (Broadman, supra, 18 Cal.4th at p. 1112; Hyde, supra, No. 166 at p. 27 [48 *CJP Supp. 309 Cal.4th CJP Supp. at p. 363].) “Choosing the proper sanction is an art, not a science, and turns on the facts of the case at bar.” (Furey v. Commission on Judicial Performance (1987) 43 Cal.3d 1297, 1318 [240 Cal.Rptr. 859, 743 P.2d 919].)
In this case, Judge MacEachern’s honesty and integrity are called into question on multiple levels. Her misconduct involved sending an intentionally false and misleading e-mail to the court’s travel coordinator in an attempt to fraudulently obtain money from the court. When confronted with the patently misleading e-mail, she contrived self-serving definitions and specious excuses. In unequivocal terms, the masters found Judge MacEachern’s testimony “was anything but credible.” In an attempt to cover up her wrongdoing, Judge MacEachern lied not only about the intent of her words, but also about her presence in certain classes.
The masters found: “Undoubtedly, MacEachern acted with intent to mislead ... the Commission.” In Adams, the Supreme Court strongly denounced a judge who made material misstatements to the commission, stating: “There are few judicial actions in our view that provide greater justification for removal from office than the action of a judge in deliberately providing false information to the Commission in the course of its investigation into charges of wilful misconduct on the part of the judge.” (Adams, supra, 10 Cal.4th at p. 914; accord, Fletcher, supra, 19 Cal.4th at pp. 887-891.)
Particularly troubling is Judge MacEachern’s willingness to lie under oath to the three special masters appointed by the Supreme Court to make factual findings critical to our decision. In seeking the truth, our justice system relies on the integrity of the oath. A judge who does not honor the oath to tell the truth cannot be entrusted with judging the credibility of others.
Numerous witnesses, including colleagues on the bench and attorneys who appeared before her, testified to Judge MacEachern’s reputation for honesty and integrity as a judge and former district attorney. As an example, some witnesses pointed out that she refused to have a “retire-the-debt” fundraiser to pay off her personal debt after being elected to the bench because she did not want to create conflicts with attorneys who may appear before her. We do not doubt that these character witnesses believe Judge MacEachern to be a good and ethical judge. Nevertheless, her reputation cannot disguise the fact that her conduct in this case, exacerbated by her lies throughout these proceedings, portrays a lack of integrity.
The commission has the responsibility of enforcing rigorous standards of judicial conduct. (Broadman, supra, 18 Cal.4th at pp. 1111-1112; *CJP Supp. 310 Inquiry Concerning Platt (2002) No. 162, Decision and Order Removing Judge Platt from Office, p. 20 [48 Cal.4th CJP Supp. 227, 253] (Platt).) Because judges occupy a position of enormous power and responsibility and pass judgment on the conduct of others, they are held to a more stringent standard of conduct than ordinary citizens and even attorneys. (See Geiler v. Commission on Judicial Qualifications (1973) 10 Cal.3d 270, 287 [110 Cal.Rptr. 201, 515 P.2d 1]; Rothman, Cal. Jud. Conduct Handbook (3d ed. 2007) § 1.11, pp. 6-7.) In addition to the lack of veracity we have observed, other aspects of Judge MacEachern’s conduct fail to comport with the high standards to which the judiciary is held. When told she could not audit classes, she attempted to circumvent AOC’s rules and flagrantly disregarded staff instructions. The masters found and we agree that she “involved unwitting and innocent persons, such as Valadez, in her misconduct.” Additionally, she failed to alter her request for educational leave and meal reimbursement for those days she was not in class until urged to do so by Judge Stock.
3. Appreciation of Misconduct
In her response to the commission’s investigation and in her testimony before the special masters, Judge MacEachern repeatedly deflected responsibility for her actions. The masters described her arrogance as “unyielding” and her remorse as “limited only to the ‘trouble’ her false e-mail caused her.” Astoundingly, she testified that she would never do it again, not because it was wrong, but because “it’s [not] worth this much trouble.” Instead of apologizing, the masters note, Judge MacEachern “engaged in scapegoating, blaming her clerk for the ‘mix up’ on her registration form [citation], blaming Gordon for not letting her into a class when there were open spots [citation], and blaming AOC staff for being uncooperative [citation].”
In her recent oral presentation, Judge MacEachern told the commission that she now recognizes that she has been arrogant and slow to appreciate the seriousness of her misconduct. Judge MacEachern has had many opportunities to accept full responsibility for her actions since she was first asked to respond to the commission’s preliminary investigation in January 2007. Contrition at her last opportunity has limited impact in comparison with well over a year of misrepresentations and excuses.
Moreover, even now she fails to fully acknowledge the gravamen of her misconduct—her intentional dishonesty. At her appearance before the commission, she acknowledged that she was wrong in seeking reimbursement for days she did not attend classes and that her statements in the e-mail were on their face misleading. Yet, she described her representation that she “sat in” on the DV Workshop as an “overstatement,” rather than acknowledging that it *CJP Supp. 311 was untrue, and continued to insist that the “mix up” she referred to in the e-mail “was the one where my clerk initially applied.” Simply put, Judge MacEachern’s purported acceptance of responsibility is too little too late.
4. Likelihood of Future Misconduct
“A judge’s failure to appreciate or admit to the impropriety of his or her acts indicates a lack of capacity to reform.” (Platt, supra, No. 162 at p. 15 [48 Cal.4th CJP Supp. at p. 248]; see Ross, supra, No. 174 at p. 65 [49 Cal.4th CJP Supp. at p. 139].) With this in mind, it bears repeating that Judge MacEachern fails to acknowledge that the essence of her wrongdoing lies not in her arrogance, but in her dishonesty. Even at her appearance before the commission, she continued to make misrepresentations. This leaves us with no confidence in her ability to reform.
After going through these proceedings, it is unlikely that Judge MacEachern would again jeopardize her career by submitting a false travel voucher if she remained on the bench. However, we are concerned that the traits and lack of judgment that led to the misconduct in this case could lead to future improper actions demeaning to the esteem of the judiciary. This is a risk we cannot run and still fulfill our responsibility to protect the public and the reputation of the judiciary.
5. Prior Discipline
Judge MacEachern has not previously been disciplined during her five years on the bench. Nevertheless, the seriousness of the judge’s misconduct and subsequent lack of candor overshadow her lack of prior discipline.
6. Impact on Judicial System
Judge MacEachern attempts to portray her misconduct as personal, having no impact on the judicial system because it did not relate to a case before her. We could not disagree more.
Public faith in the integrity of the judicial system is seriously compromised by a judge who attempts to obtain money from the government through false pretense. Court staff must be able to rely on the truthfulness of information provided by judicial officers. Judges uphold laws which require citizens to provide truthful information for purposes of obtaining funds from the government. A judge must follow and respect the same laws and standards that apply to the public.
*CJP Supp. 312 Moreover, a judge who lies under oath when her conduct is called into question does grave damage to public respect for the judiciary. Litigants and attorneys can have little confidence in that judge’s ability to determine the credibility of witnesses and seek the truth. Any discipline short of removal would not be adequate to fulfill our mandate to uphold public confidence in the integrity and propriety of the judiciary.
C. Mitigation
In testimony and letters admitted at the hearing before the masters, numerous character witnesses, including attorneys and fellow judges, described Judge MacEachern as a conscientious, knowledgeable, and fair jurist. Based on this evidence, the masters found in mitigation that Judge MacEachern “is well-known for being a hardworking and ethical judge.” Judge MacEachern argues that the high regard to which she is held in her community weighs heavily against removal.
Mitigating evidence is not relevant in determining if the judge engaged in bad faith, and thus engaged in willful misconduct, but may be taken into account in determining the totality of the circumstances as pertinent to determining the appropriate discipline. (Freedman, supra, No. 179 at p. 7 [49 Cal.4th CJP Supp. at p. 232]; Broadman, supra, 18 Cal.4th at p. 1112.) We have considered the character evidence offered by Judge MacEachern on the question of discipline, which has made our task all the more difficult. However, her reputation in the community cannot redeem the seriousness of her wrongdoing and its negative impact on the reputation of the judiciary.
ORDER REMOVING JUDGE MacEACHERN FROM OFFICE
Pursuant to the provisions of article VI, section 18 of the California Constitution, Judge Kelly MacEachern is ordered removed from her judicial office; pursuant to that section of the Constitution and rules 120(a) and 136 of the Rules of the Commission on Judicial Performance, Judge MacEachern is hereby disqualified from acting as a judge.
Commission members, Hon. Judith D. McConnell, Hon. Katherine Feinstein, Mr. Marshall B. Grossman, Mr. Samuel A. Hardage, Ms. Barbara Schraeger, Ms. Maya Dillard Smith, and Mr. Nathaniel Drives voted in favor of all of the findings and conclusions expressed herein and in the foregoing *CJP Supp. 313 order of removal and disqualification of Judge MacEachern. Commission members Mr. Peter E. Flores, Jr., Mr. Lawrence Simi, and Ms. Sandra Talcott concur as to the factual findings and legal conclusions expressed herein, but dissent as to the order of removal and would have imposed a severe public censure.
Hon. Frederick P. Horn was recused.
DISSENTING OPINION
Commission members Lawrence Simi, Peter Flores, Jr., Esq., and Sandra Talcott express the following opinion.
We fully concur with the special masters and our colleagues on the commission in the findings of fact and conclusions of law in the case of Judge Kelly MacEachern.
Judge MacEachern, by submitting a false claim for reimbursement, violated the California Code of Judicial Ethics, amounting to willful misconduct within the meaning of article VI, section 18, subdivision (d) of the California Constitution. She then compounded that conduct before the commission, and, under oath, the panel of special masters, by her defensive, disingenuous lack of candor and her misleading attempts to excuse her conduct.
Our difference of opinion with our colleagues rests only with the level of discipline. Judge MacEachern has not previously exhibited patterns of behavior that lead us to believe she would repeat the grave mistakes she made in this case. Based on the special masters’ factors in mitigation concerning the judge’s reputation in the community, and the many personal letters of support, it is clear to us that Judge MacEachern’s integrity and honesty as a jurist and former deputy district attorney are well known in the community and she is known to be a hard-working and ethical judge. Additionally, as the masters also set forth in mitigation, Judge MacEachern has never previously been disciplined. Her conduct in this case, we believe, was an isolated instance of wrongdoing.
At the public hearing before the commission, Judge MacEachern acknowledged her mistakes, took responsibility for them, and expressed remorse. We believe she was sincere. We feel that this experience has made an indelible impression on a judge who, heretofore, has had a good reputation as an honest, hard-working bench officer. The fact that she has demonstrated remorse and contrition, and that this offense does not directly relate to court proceedings, nor affect nor harm litigants, has added weight to our decision.
*CJP Supp. 314 Removal is the ultimate sanction for a judge. We do not feel this one-time error in judgment and behavior, albeit highly egregious, rises to that level. We therefore voted to impose a severe public censure, rather than remove Judge MacEachern from the bench.
The judge’s petition for review by the Supreme Court was denied on December 10, 2008.

 We make no finding as to whether Judge MacEachern went into the Evidence or Civil Topics classrooms since she was not charged with making misrepresentations concerning her attendance at these classes.

 Valadez thought Judge MacEachern had attended the Excellence in Judging class because he had the judge’s e-mail confirming her registration request with him when he was processing the claim. Judge MacEachern testified that she did not believe she sent this document to Valadez with her reimbursement claim. Valadez testified that he “probably" received it along with the judge’s travel reimbursement claim. Based on this record, we find that there is not *CJP Supp. 299 clear and convincing evidence that the registration confirmation was sent by Judge MacEachern when she submitted her reimbursement request.

 CJER had already paid for Tuesday night’s stay based on Judge MacEachern’s attendance at the Wednesday Statement of Decision class.

 Judge Murphy resigned from office just prior to the commission’s decision; the actual decision therefore became a public censure and bar from assignment.

 Suspension of a judge is not authorized under the California Constitution. (Cal. Const., art. VI, § 18, subd. (d).)